SMITH *v.* STATE

No. 40854 June 9, 1958 103 So. 2d 360

*Wm. S. Murphy,* Lucedale; *Carl E. Berry, Jr.,* Hatties-burg, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

ROBERDS, P. J.

About three o'clock in the afternoon of December 17, 1956, a collision occurred between an International trailer-truck, being driven by Smith, the appellant, and a 1956 Ford two-door sedan passenger automobile, being driven at the time by Mrs. Betty Jean (Jack) Hardin. Mrs. Hardin was instantly killed. Smith was convicted of involuntary manslaughter, as a result of the death of Mrs. Hardin, and sentenced to pay a fine of One Thousand Dollars and the court costs. Smith appealed to this Court.

His main contention is that the testimony was insufficient to sustain the conviction. The rule in this State by which to test the sufficiency of the evidence to sustain convictions of this type is that the negligence of accused must be tantamount "to a wanton disregard

of, or utter indifference to, the safety of humsan life."
Smith v. State, 197 Miss. 802, 20 So. 2d 701; Suber v.
State, 226 Miss. 525, 84 So. 2d 793; Hatcher v. State,
230 Miss. 257, 92 So. 2d 552.

There is little dispute in the testimony. It is amply
sufficient to justify the following findings of fact:

 ██ Mr. and Mrs. Hardin resided at Rye, Colorado.
They had become man and wife December 8, 1956, eight
days before the deplorable accident. They were on their
bridal trip. The accident happened on U. S. Highway
98, in George County, Mississippi, about eight miles east
of Lucedale, this State. Mrs. Hardin was driving at the
time. Much travel passes over this highway. It was
paved. She was going up a hill, driving at a moderate
rate of speed. There were yellow lines forbidding motor-
ists to cross these lines into the opposite lane of the high-
way. The road ran almost east and west. The Ford car
was on its south side of the highway, the proper side.
Smith suddently came over the top of the hill in a 1951
International truck-trailer. He was driving fifty to sixty
miles per hour. He was traveling west. He was in the
south lane of the highway, the wrong lane. He ran into
the Ford, demolishing it, killing Mrs. Hardin instantly.
The trailer-truck continued west some two hundred
eighty-five feet before stopping. Greater negligence
than this is hard to conceive unless accused intentionally
and willfully commits the act. The verdict of the jury
was amply justified.

Appellant endeavors to make much of what may, or
may not, be a discrepancy in the State's proof. Hardin
testified that after the collision he approached Smith
and asked "What did you do, fellow, go to sleep? * * *
I guess you know you have killed her", and that Smith
turned about and went to where he had parked his trailer-
truck without saying anything.

The residence of Mr. Shelby Smith, ex-sheriff of Geor-
ge County, was located about two hundred and fifty

yards west of the scene of the accident. He heard the impact and was the first person on the scene except those involved. Mr. Hardin was in his car with his arms around his wife. She was dead. He testified he heard Smith, the appellant, say "I must have been asleep." The witness did not specify just the moment this was said.

Mrs. Shelby Smith came to the scene after her husband got there. She testified she heard Mr. Hardin say to Smith "You killed my wife. Why did you do it? Are you drunk?", and that Smith replied "No, I must have fallen asleep." No exact moment of time is fixed as to when any of the remarks were made. Whether Hardin had only one or more than one conversation with appellant is not definitely shown. Whatever discrepancy is presented by this situation was a matter for the jury.

██ Appellant complains of the refusal of the court to grant him instructions Nos. 5, 8 and 10. Instructions Nos. 5 and 10 required the jurors to believe defendant guilty beyond every reasonable doubt and to the exclusion of every reasonable hypothesis, — instructions applicable to cases resting entirely upon circumstantial evidence, but not applicable to the evidence in this case, where much of the testimony was given by an eye-witness to the events, Instruction No. 8 announced the rule of reasonable doubt and informed the jurors that each and every one must believe defendant guilty beyond a reasonable doubt before he should vote to convict. The instruction might properly have been granted, but it was not error to refuse it because other granted instructions announced the same rules of applicable law and prescribed the duties of the jurors.

██ Appellant assigns as error the action of the court in granting to the State instructions Nos. 1 and 4 in the form granted. The complaint is that these instructions failed to charge the jurors that they must believe defendant guilty "to the exclusion of every reasonable hypothesis of innocence." As above-shown, this case

did not rest upon circumstantial evidence alone, nor, for that matter, mainly upon such evidence.

It might be added that the instructions granted the State and defendant, taken together, fully and accurately set forth the rules of law and duties of jurors applicable to the facts of this case. It appears to us from this record appellant had a fair trial.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.

GILLESPIE, J., dissenting:

This case has received the closest scrutiny, and I am unable to reconcile my views with that of the majority. I dissent with deference. It is a close case. The record shows without dispute that appellant was struggling to bring his truck back to his right side of the road when the collision occurred. It also shows without dispute that the point of impact was only a foot or two to the left of appellant's traffic lane, clearly indicating that if the deceased had pulled her car to the right a few feet the collision would not have occurred. While I recognize that the jury had a right to reject appellant's version of the facts, it is significant that appellant testified that the reason he drove to the left was because the deceased was operating her automobile on appellant's side of the road; that he turned to his left into his left lane to avoid a collision; that deceased drove back to her right, and he was trying to get back on his right lane when the collision occurred. Mr. Hardin, husband of deceased, and the only surviving person present except appellant, testified that the deceased was operating on the correct side of the highway, but he admitted that he was not looking a the road as he would if he had been driving, and that he did not see appellant's truck until it was within 175 feet of him, at which time appellant

was trying to get back to appellant's right side of the highway. Mr. Hardin's testimony is only entitled to slight probative value as to which traffic lane the deceased was in before he looked up and saw appellant's truck being operated on the wrong side of the highway.

There was some conflicting proof on the part of the State, which was denied by appellant, that appellant stated after the accident that he must have fallen asleep. On the other hand one of the State's witnesses who talked to appellant just after the accident testified that appellant then stated that the deceased's automobile was being operated on the wrong side of the highway, thus corroborating appellant's version.

If it be conceded that the jury had a right to reject appellant's version that he drove to the left to avoid a collision (which, if true, would have absolved him of simple negligence), the only other possible theory of fact admissible under the proof was that appellant fell asleep, which, if true, would not constitute culpable negligence.

In this case, it is important to state what the evidence does not show. There was no proof that appellant had been drinking intoxicants, or that he was speeding, or that he had operated his truck recklessly at any time prior to a moment before the collision. It was shown without objection that appellant had operated trucks for many years without accident.

When the case is viewed in the light of appellant's reasonable explanation why he drove to the left, with only slight conflict thereof of very dubious probative value, and the utter failure of the State to prove any other reason why appellant ran his truck onto the left lane of traffic, unless it was because he fell asleep, it does not seem to me that a man should be convicted on such proof.

*Kyle* and *Arrington, JJ.,* join in this dissent.