Hadley *v.* State

No. 43740     .     December 13, 1965     180 So. 2d 920

*Raymond Swartzfager, Jr., L. Percy Quinn,* Laurel, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Lee, C. J.

Harold Hadley was convicted, in the Circuit Court of Jones County, of the offense of burglary, and was sentenced to serve a term of three years in the state penitentiary. From the judgment entered, he appealed.

Reginald Holifield, an employee of M. M. Bake Shop in Laurel, testified that, about 2:15 A.M. on October 12, 1964, he was driving his pickup truck to work. As he was passing the bowling alley on well-lighted Beacon Street, his attention was attracted when a bowling ball came out of the bowling alley, rolled across the street, and passed under his truck. When he looked around, he saw three Negroes standing just inside the door of the building. He saw them walk out in the street. Immediately he turned his vehicle around and followed as they ran along the street. They were about fifty yards from him at that time. As he pursued, the defendant looked back over his shoulder and witness got a good look at him. He described defendant as short, stout, and wearing black pants and a black jacket. The defendant threw down a box as he was being pursued. When he last saw these parties, they were about 120 yards away. At that time he found the police patrol, told them what he had seen, and set them to the task of apprehending the burglars. After he had parked his truck in front of the civic center, he again saw the defendant run across the street in front of his parked truck, just a moment after he had stopped it. One of the

other parties was with him at the time. While the police continued to chase these parties, four or five minutes later, he saw the defendant climbing over a fence. Finally, several minutes later, he saw the defendant in the police car after the officers had captured him in the canal. The witness positively identified the defendant as one of the burglars.

Lenox Landrum, a policeman, testified that within a minute after Holifield had reported the crime to him, he saw three colored men in an alley. As he started toward them, they ran. He gave pursuit and got within 15 or 20 feet of them. He saw one of them running in front of, and one behind, the pickup truck of Reginald Holifield which had been parked in front of the civic center. Finally he and his aides found the defendant lying in the bottom of the canal. Later he found certain loot which had been taken from the bowling alley and had been dropped by the burglars. The defendant, at the time of his arrest, was dressed in dark clothes, just as he had been described by Holifield.

M. E. Campbell, another policeman who participated in the chase and apprehension of the defendant, testified that, when they finally captured the defendant, he was hiding in the canal, lying on his back. At the time, he was wet, hot, had been running, and was panting for breath. Several other officers gave corroboration to the version of Lenox Landrum and Campbell.

The evidence showed the names of the owners of the building and property, and also the occupant and operator of the business therein. It also showed the way and manner in which the building was broken into and entered, and the amount and value of the money and other property, stolen and carried away, aggregating approximately $115.00.

Wilbur Mayfield, a seventeen year old boy, the only witness called by the defendant, testified that he and two other Negroes broke into the bowling alley; but

he did not know their names, although he had heard one of them called "Cubie". He said that Harold Hadley had nothing whatever to do with the burglary. This witness was cross-examined at length. From a reading of his version, it can be readily seen that it probably had very little weight with the jury.

Thomas A. Landrum, the Youth Court Counsellor, testifying for the state in rebuttal, said that he knew Willie Mayfield and his general reputation for truth and veracity in the community where he lived, and that such reputation was bad.

The appellant contends that he was entitled to a directed verdict, and he cites James v. State, 77 Miss. 370, 26 So. 929 (1899), and Ross v. State, 42 So. 801 (Miss. 1907).

It must be remembered that the state witness, Reginald Holifield, testified that he first saw the defendant and two other parties standing just inside the door of the bowling alley. It was shown that this was a well lighted street, and the lights of his truck were good. Second, the appellant looked back over his shoulder and the witness got a good look at him. For the third time, he saw defendant again as he crossed the street in front of his parked truck. For the fourth time, he saw the defendant climbing a fence. For the fifth time, he saw the defendant after his apprehension by the officers. In addition, the witness described the defendant's clothes and his build, and there was corroboration in these respects by other witnesses. The appellant, when he was arrested, was lying down in a wet canal, and his appearance evinced the fact that he had been running and was seeking to escape from the clutches of the law. Thus, the direct evidence, together with the other corroborating circumstances, fully justified the court in refusing to grant the peremptory instruction to the appellant. The cases, which he cited, in no way conflict with the decisive question in the present appeal.

■■ ■ The appellant also contends that the instructions for the state should have expressly required the state's evidence to establish the guilt of the appellant beyond reasonable doubt and to the exclusion of every other reasonable hypothesis than that of the guilt of the accused. To that end, he has cited Irving v. State, 100 Miss. 208, 56 So. 377 (1911), and Smith v. State, 101 Miss. 283, 57 So. 913 (1912).

In this case, it must be borne in mind that there was direct evidence by the witness Holifield that he saw the appellant five different times, and was able to identify him positively as one of the participants in this burglary of the bowling alley in question.

This Court has long since held that "It is only in cases, as a general rule, where the evidence is entirely circumstantial that the jury should be required to exclude every other reasonable hypothesis than guilt before a conviction can be had." Pettus v. State, 200 Miss. 397, 411, 27 So. 2d 536, 540 (1946). That case was followed and cited in Kirk v. State, 222 Miss. 187, 191, 75 So. 2d 641, 642 (1954), where it was held that the State's instruction was not erroneous because it did not contain the clause "to the exclusion of every other reasonable hypothesis consistent with innocence." It was there pointed out that the inclusion of the quoted phrase is proper where the guilt of the accused is based entirely upon circumstantial evidence; but, in that instance, there was an admission by the appellant of the possession of the whiskey, as charged in the trial court.

The foregoing principle, laid down in the Pettus and Kirk cases, *supra,* has been repeatedly followed in Burgess v. State, 245 Miss. 1, 145 So. 2d 160 (1962); Passons v. State, 239 Miss. 629, 124 So. 2d 847 (1960); Smith v. State, 233 Miss. 886, 103 So. 2d 360 (1958). Consequently this assignment is untenable.

The appellant also contends that the verdict of the jury evinced bias and prejudice and that he had not

obtained a fair and impartial trial under the state and federal constitutions.

■■ ■ While no particular provision of either the state or federal constitutions is called to the attention of the Court, a consideration of this record shows conclusively, if human testimony and circumstantial evidence can rightly be employed to establish the guilt of a person charged with crime beyond a reasonable doubt, that this appellant has received a fair and impartial trial and has received every right to which he was entitled under both the state and the federal constitutions. Consequently, it follows that the cause must be, and it is, affirmed.

Affirmed.

*Gillespie, Jones, Inzer and Smith, JJ.,* concur.