211 So.2d 520 (1968)
Robert A. BENNETT
v.
STATE of Mississippi.
No. 44940.
Supreme Court of Mississippi.
June 10, 1968.
Rehearing Denied July 8, 1968.
*522 Johnston & Johnston, John M. Sekul, Biloxi, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., and Laurence Y. Mellen, Special Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
The appellant appeals from a judgment of the Circuit Court of Harrison County wherein he was convicted of receiving stolen goods, fined the sum of $250 and costs, and disbarred from the practice of law. His disbarment was suspended and he was placed on probation for a period of five years. Prior to the trial on the merits, appellant filed a motion to quash the indictment, a motion for return of the seized property and a motion to suppress the evidence. The grounds upon which these three motions were predicated were that the evidence procured and obtained against the defendant was incompetent, was obtained in an unlawful and illegal manner without search warrant and without a warrant for the arrest of defendant.
As will be reflected in the statement of facts and in the opinion, the lower court was correct in overruling appellant's three preliminary motions. The demurrer to the indictment was properly overruled because the indictment was properly drawn under Mississippi Code 1942 Annotated section 2249 (1956) and stated a violation of said section.
The trial court sustained the motion of the State to amend the indictment so that the name of the watch described in the indictment could be changed from "one silver EPEC watch" to "one silver EBEL watch." The act of the trial court in permitting the amendment is assigned as one of the seventeen errors in support of a reversal. The trial court properly permitted the amendment for the reason that the variance was not material to the merits of the case and the defendant was not prejudiced thereby in his defense on the merits. The amendment permitted did not constitute a new indictment or a new description which would prevent the appellant from understanding the offense with which he was charged. Miss.Code 1942 Ann. § 2532 (1956); Jones v. State, 215 Miss. 355, 60 So.2d 805 (1952); Horn v. State, 165 Miss. 169, 147 So. 310 (1933); Davis v. State, *523 146 Miss. 322, 111 So. 564 (1927); and Freeman v. State, 108 Miss. 818, 67 So. 460 (1915).
On the night of November 8, 1966, Homer B. Alexander, a resident of Dallas, Texas, and a traveling salesman, registered at a motel on the beach in Biloxi, Mississippi, and was assigned to room 125. After having dinner he proceeded to visit several nightclubs, imbibing freely of sundry alcoholic beverages. He met a girl named Linda Bailey, also known as "Gigi" (Marquette), with whom he drank and for whom he purchased a bottle of champagne to be consumed in the room at the motel. She accepted his proposition and they went to his motel room. He had squandered all of his money in his riotous living except $20. The record discloses that $25 was the price which his Dulcinea expected.
Upon reaching his motel room and lying down upon the bed he was overcome by his alcoholic intake and remembered nothing. When he awoke about 10:00 o'clock the next morning and reached for his watch, valued at $75, to see what time it was he found it was gone; also his diamond ring valued at $350 and his cigarette lighter of a value of $14 were missing. His shirt and tie, the $20 he had when he went to sleep, and a bottle of Scotch whisky were also missing.
Mr. Lawrence Taylor, the manager of the motel, arrived at work around 6:00 A.M. After he had parked his car he saw a woman come out of room 125 with several articles in her hands. She was in a hurry and was rushing to get into a taxicab which was parked in an area prohibited by the motel. Mr. Taylor tried to stop the cab driver but was unsuccessful. However, he did succeed in getting the cab's license number. After discovering that the above named articles had been stolen, Mr. Alexander telephoned the office and reported to Mr. Taylor that he had been robbed. Mr. Taylor then called for the police who came to the motel and Alexander told them what had happened, and gave them a description of his missing articles. Mr. Taylor furnished the police with the license number of the cab and told them to find out who the driver was. The driver revealed the name of the young woman whom he had transported from the motel. Shortly thereafter the police officers of Biloxi picked up the young woman and brought her to the motel where she was identified by Mr. Alexander as the woman whom he had taken into room 125 the night before. Subsequently, Mr. Alexander made an affidavit charging her with stealing his ring, his watch, and his cigarette lighter, of the aforesaid values. "Gigi" was arrested and placed in jail.
After conducting his business for the day, Mr. Alexander returned to his room around 5:30 and found that the message light in his room was on. Upon calling the desk he ascertained that there had been a call from an attorney named Bennett who wanted to talk with him and who had left his number. He telephoned Bennett, the appellant, who advised him that "Gigi" was not his client but that he was acting as a favor for a friend and that Alexander had identified the wrong girl. Alexander replied that as far as he was concerned she was the right girl and what he wanted was to get his merchandise back. He inquired as to what his chances were of getting the merchandise back. Alexander testified that Bennett replied "they are slim or nothing, I am going to have to charge them $500 to represent them, and they will either have to sell the merchandise to pay for that fee or they will throw it in the ocean one. You will never see it. Are you going to be in town tomorrow?" Alexander further testified that in about twenty or thirty minutes appellant called back to the motel and stated that he would like to see him in the lobby of the motel about 8:00 P.M., advising him "there might be a possibility of your getting your stuff back."
*524 When Alexander returned appellant's call appellant was at the police station seeking to obtain "Gigi's" release. Mrs. Thelma Jean Kenniston had called appellant asking him to secure "Gigi's" release and had furnished $100 in cash in order to obtain the $1,000 bond. "Gigi's" release was effected and appellant and his wife drove his client to the trailer where she had been living, in order that she could check and be sure that all of her belongings had been removed. After determining that all her belongings had been removed she then went to her fiance's car and from the back seat she took Alexander's ring, watch, and lighter and gave them to appellant. Appellant then locked them in the trunk of his car.
Appellant drove to the motel and met Mr. Alexander in the lobby. The substance of this conversation was that Alexander could get his belongings back but the appellant would have to charge him $500 or $1,000; that "Gigi" wanted to sue Mr. Alexander for false arrest. Mr. Alexander went to the office of the motel and asked if they would cash his check for $500. Mr. Taylor refused to cash the check but told Mr. Alexander that he would cash a check in the morning. Mr. Alexander advised appellant that he would have to call his wife and be sure that his check was honored, and he asked Bennett how he planned to get the merchandise back. Although the appellant had the merchandise at this time in the trunk of his car, he advised, according to Mr. Alexander, that "I will just go down and park my car in a certain location and tell them my car is there, and I will go and get a cup of coffee and when I come back I want it in the glove compartment, and it will be in the glove compartment." Mr. Alexander advised appellant that he did not have the kind of money that appellant was requesting and that the appellant then lowered the price, stating, "Well, maybe for the $100 bond they had to pay to get her out of jail, and a $100 for my fee, we might can work out something." Alexander then went to Mr. Taylor again seeking to cash a check for $200, which Mr. Taylor said he would not do until the next morning. Appellant agreed to meet with Mr. Alexander the next morning around 8:30.
The next morning Mr. Taylor called the bank and advised the bank to take the serial numbers from bills totaling $200, which was done. An employee of the motel went and picked up the bills. Appellant came into the lobby of the motel and met Mr. Alexander at a table situated herein, as had been agreed on the night before. Mr. Alexander endeavored to have the check for $200 cashed but was advised that the bank did not open until 9:00 o'clock and that the check would be cashed at 9:00. Appellant and his wife then left the motel and had a cup of coffee and returned to the motel. Appellant walked into the lobby with the ring, watch and lighter in his hand and also a sheet of paper on which the appellant had written a release which he said was signed by "Gigi." Appellant had heretofore assured Mr. Alexander that he would protect him by getting a release from his client so that she could not bring a suit against him for false arrest.
Mr. E.P. Vincent, Chief of Detectives of the Police Department, had been called by Mr. Taylor and was standing behind the desk with Mr. Taylor at the time appellant returned to the motel. The appellant laid the three articles of Mr. Alexander on the table asking him if these looked familiar to him. Alexander then went to the desk and cashed the $200 check, receiving the marked bills, and came back and counted the money out to appellant. Appellant laid the three articles on the table and was counting the money himself when Mr. Vincent came up and took the money out of his hand and arrested him. Mr. Taylor, Mr. Vincent and Mr. Alexander all stated that the appellant had the money in his hand when it was seized and it was not in appellant's pocket as appellant urges. Mr. Vincent picked up the ring, the watch and *525 the lighter, and also the release which was in the following language:
"Release
"I hereby release H.B. Alexander from all causes of action whatsover in return for his dropping all charges against me.
 s/ Linda Bailey
"Dated this 10th day of November, 1966."
Mr. Alexander identified the property as his and stated the diamond ring was worth $350, the watch worth $75, and the cigarette lighter worth $14. Repeatedly the appellant stated, when he took the stand in his own behalf, that "Gigi" had told him that Mr. Alexander had given her the property; that the property was to be held as security and that when he paid her fee the items would be returned to him. When she was brought into the police station in the presence of the officers, including Chief of Detectives Vincent, she denied that she had stolen the property and asserted that Alexander had given it to her. Appellant urged when testifying and urges in his brief that he had a right to rely upon the statements of his client in defense of the State's charge of his receiving stolen property.
The jury found the appellant guilty and he was disbarred by the trial judge from the practice of law as required by Mississippi Code 1942 Annotated section 8667 (1956) and was sentenced to pay a fine of $250 and costs. The trial court, however, suspended the disbarment sentence and placed the appellant under the supervision of the State Probation and Parole Board until the trial court in term time, or the judge in vacation, shall alter, extend, terminate or direct the enforcement of the above sentence, basing the suspension of said sentence on the usual and prerequisite requirements of the parole act.
Seventeen different assignments of error are urged. Only those errors which we feel are meritorious will be considered in this opinion. The first error assigned which merits our consideration is that the evidence used in the trial was obtained by an unconstitutional search and seizure and therefore is inadmissible and vitiates the conviction. Appellant's contention that the appellee violated the appellant's right of privacy under the Fourth Amendment and right of due process under the Fourteenth Amendment is without merit. In support of the first assignment appellant cites Lanza v. State of New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Smith v. State, 228 Miss. 476, 87 So.2d 917, 58 A.L.R.2d 1052 (1956); and Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950). We have no argument with appellant's contention that Mapp v. Ohio and Lanza v. State, supra, accurately state the law and that Smith v. State and Brooks v. State, supra, are accurate pronouncements of the rule with reference to an unconstitutional search and seizure and the inadmissibility of evidence obtained thereunder. The facts in these cases are clearly distinguishable from the case at bar. It is to be remembered that in the case at bar the felony was committed in the presence of the officer. No search warrant was necessary as the stolen property was seen in appellant's possession by an officer just prior to his arrest. It is undisputed that "Gigi" was charged with stealing Alexander's property; that an affidavit had been made against her; that she had been arrested and was placed in jail. The proof is evident that the appellant had full knowledge of all these facts and furthermore the appellant saw "Gigi" remove the stolen property from the back of the car where it had been secreted. The appellant had every reasonable ground as a reasonable man to know that the property which he locked in the trunk of his car was stolen property and that this property was taken by "Gigi." Chief of Detectives E.P. Vincent had reasonable grounds to suspect that appellant was committing a felony in violation of Mississippi Code 1942 *526 Annotated section 2249 (1956) which provides as follows:
If a person buy or receive in any manner or on any consideration personal property of any value, feloniously taken away from another, knowing the same to have been so taken, he shall be guilty of receiving stolen goods, and, on conviction, shall be punished by imprisonment in the penitentiary not more than five years, or by imprisonment in the county jail not more than six months, and by fine, not more than two hundred and fifty dollars.
In the case at bar the appellant was notified subsequent to the time that Mr. Vincent seized the money out of appellant's hand that he was under arrest. We have repeatedly held that an arrest without a warrant, otherwise legal, is not rendered illegal by the failure of the arresting officer to inform the person arrested of the object and cause of his arrest. Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962), appeal dismissed, and cert. denied, 372 U.S. 709, 83 S.Ct. 1018, 10 L.Ed.2d 125, rehearing denied, 373 U.S. 947, 83 S.Ct. 1536, 10 L.Ed.2d 703 (1963). In the Smith case, urged by appellant, we held the search to be unlawful because the reasons for allowing the arrest to be made without a warrant had disappeared. The search in the Smith case was no longer incident to the arrest. As was explained in the Smith case, "Section 2470 * * * authorizes the arrest without warrant for an indictable offense committed in the presence of an officer. If the arrest was legal, the search was legal, 79 C.J.S. Searches and Seizures § 68."
In the presence of Chief of Detectives Vincent and Mr. Taylor, appellant passed the stolen property to Mr. Alexander. This act was seen by Mr. Vincent, who saw the stolen property in the hands of appellant, and therefore justified the arrest by Mr. Vincent of appellant and the taking of the evidence from him. We have held the eye cannot commit a trespass and we hold that the arrest in the case at bar was legal and did not violate any of the appellant's rights under the United States Constitution or the Constitution of the State of Mississippi. Reed v. State, 199 So.2d 803 (Miss. 1967); Wilson v. State, 186 So.2d 208 (Miss. 1966). In Reed we held that where an official has probable cause for arrest and the misdemeanor is committed in his presence the search is reasonable. That Vincent had a probable cause in the case at bar is beyond dispute.
Appellant's assignment of error that the proof is insufficient to show that appellant knowingly received stolen goods is without merit for the reasons herein-above given. As we have heretofore said in Francis v. State, 154 Miss. 176, 122 So. 372 (1929), "* * * where circumstances warrant the conclusion that they were stolen by another, and they are traced to the possession of the defendant, under circumstances sufficient to make him believe they were stolen, this is sufficient to uphold a conviction. By knowing them to be stolen is not meant that the defendant should personally have witnessed the theft. If the transaction is such as to convince him, or as should do so, that the things were stolen, and he received them, he has knowledge to make him guilty." (154 Miss. at 178, 122 So. at 373.)
Likewise, in Pettus v. State, 200 Miss. 397, 27 So.2d 536 (1946) we said:
[T]he word "knowing" in its relation to receiving stolen goods means that, if a person has information from facts and circumstances which should convince him that property has been stolen, or which would lead a reasonable man to believe that property had been stolen, then in a legal sense he knew it. (200 Miss. at 410, 27 So.2d at 540.)
There is no merit in the error assigned by appellant that the trial court should have permitted appellant on the voir dire examination to advise the jury of the mandatory disbarment required in section 8667. The mandatory disbarment of a *527 lawyer convicted of a felony has no bearing whatsoever on the guilt or innocence of that lawyer who is charged with a felony. The jury's duty was to weigh the evidence which was presented to them and to find as a matter of fact whether or not the appellant was guilty of the crime with which he was charged and for which he was tried. The appellant's guilt or innocence was the concern of the jury and not whether the appellant should be disbarred or not disbarred. The sentence, insofar as the disbarment is concerned, was statutorily imposed and it was not within the provision of the trial judge to say whether or not the appellant should be disbarred. The trial court was under the mandate of the legislature to disbar the appellant upon conviction. It follows, therefore, that refusal of the trial court to allow counsel to apprise the jury of the nature of the disbarment penalty during the voir dire examination did not constitute error. Furthermore, appellant has not presented the reasons why the knowledge of the jurors of the penalty imposed would affect their functions as the finders of fact. Moreover, appellant has waived this assignment of error by not so arguing. Dozier v. State, 247 Miss. 850, 157 So.2d 798 (1963); Bridges v. State, 154 Miss. 489, 122 So. 533 (1929); and Johnson v. State, 154 Miss. 512, 122 So. 529 (1929).
Appellant urges that there is no proof in the record that the personal property of the State's prosecuting witness, Alexander, was feloniously taken from him as charged in the indictment and that appellant received said property knowing that it had been feloniously taken from Mr. Alexander. There is no merit in this assigned error for the reason that the proof conclusively shows that Alexander testified that the watch, ring and cigarette lighter were stolen from him by "Gigi" Marquette. The proof conclusively shows that the appellant knew that Alexander asserted that his property had been stolen and that Alexander had made an affidavit to this effect. Appellant knew that the items which Alexander stated were stolen were in the possession of his client, "Gigi" Marquette, and furthermore he saw her remove them from the back of a car where they had been placed by her fiance. These were questions of fact and were determined by the jury when they rendered their verdict against appellant. The proof is ample to justify the verdict which the jury returned. The essential ingredients of knowing that the goods were stolen was met by the State's evidence. Pettus v. State, 200 Miss. 397, 27 So.2d 536 (1946); Francis v. State, 154 Miss. 176, 122 So. 372 (1929); and Frank v. State, 67 Miss. 125, 6 So. 842 (1889).
There is no merit in the error assigned by appellant that the State's witness, Alexander, was not entitled to the possession of his property. The possession of the property is not involved in the prosecution of the suit against appellant and the legality or illegality of the purported contract likewise has no place in this cause. State's prosecuting witness, Alexander, was entitled to receive the property which had been stolen from him subsequent to the disposition of the case.
We have carefully read the instructions granted and refused the State and appellant and must concede that they contain no reversible error and therefore there is no merit in this assignment of error by appellant. The trial court granted the State an instruction which is as follows:
The Court instructs the jury for the State that you do not have to know that the Defendant is guilty before you can convict him; it is only necessary that you should believe from the evidence, beyond a reasonable doubt, that he is guilty, and if you do so believe from all of the evidence, beyond a reasonable doubt, then the defendant is guilty, and it is your sworn duty to say so by your verdict.
Appellant urges that this is reversible error, and this is the only instruction error *528 which merits our consideration. We pointed out in Drummond v. State, 103 Miss. 221, 60 So. 138 (1912) that while this instruction was erroneous it was harmless error because no honest and reasonable jury could have rendered any other verdict. In the case at bar, under all the facts and with all the instructions considered together, the jury could not have honestly and reasonably found the appellant not guilty. The instructions granted the state relating to the knowledge necessary on appellant's part that the goods were stolen before he can be convicted are not erroneous. Frank v. State, supra; Daniel v. State, 212 Miss. 223, 54 So.2d 272 (1951). Under the facts the appellant was properly denied a peremptory instruction. The appellant was not prejudiced by the trial court's refusal to grant the other instructions requested by the appellant.
In conclusion, insofar as the direct appeal is concerned, we are required to hold that the trial court properly refused to grant a new trial, and that appellant received a fair and impartial trial. McLelland v. State, 204 So.2d 158, sugg. of error overruled (Miss. 1967).
The briefs filed in this case are exceptionally well prepared. Every possible legal ground in appellant's behalf is urged by counsel representing him. No safeguard to his rights has been overlooked, but the verdict of guilty and the judgment thereon is affirmed insofar as the guilt of the appellant is concerned.

ON CROSS APPEAL
The State filed a cross appeal and assigns as error the action of the trial court in suspending appellant's disbarment and placing appellant on probation for five years. The judgment of conviction ordered the disbarment of appellant and immediately thereafter the order provided that the order of disbarment was suspended and the appellant was placed on probation for five years under the supervision of the probation and parole officer. The conditions of the probation were as set out in Mississippi Code 1942 Annotated section 4004-24 (1956) with the additional provision that that appellant was to abide by the ethics of the legal profession.
The crime for which appellant was convicted is a felony. Mississippi Code 1942 Annotated section 8667 (1956) provides as follows:
Every person who has been or shall hereafter be convicted of felony, manslaughter excepted, shall be incapable of obtaining a license to practice law; or, if already licensed, the court in which he shall have been convicted shall enter an order disbarring such convict.
This Court held in Ex parte Crisler, 159 Miss. 247, 132 So. 103 (1931) that a full pardon of an attorney after he had been disbarred because of conviction of a felony absolved the attorney from all consequences of the order of disbarment and entitled him to reinstatement.
In Disbarment of Prisock, 244 Miss. 417 141 So.2d 715, suggestion of error overruled 244 Miss. 423, 143 So.2d 434 (1962) the Court held that an attorney convicted of a felony was automatically disbarred as a part of his punishment. It is argued that because the disbarment has been said to be a part of the punishment that the circuit judge may therefore suspend the disbarment as provided by Mississippi Code 1942 Annotated section 4004-23 (Supp. 1966).
After the Crisler case was decided in 1931 a comprehensive act was passed by the legislature, being Chapter 121, Laws of 1932, providing for the organization, regulation and government of the Mississippi State Bar and for the first time requiring all lawyers practicing within this State to become members of the association. It defined the duties of the association and its board of governers. One of the provisions of that law is now Mississippi Code 1942 Annotated section 8714 (1956) which provides the procedure for *529 the reinstatement of any member of the bar who has heretofore or who may hereafter be disbarred. This statute is in part as follows:
When any member of the bar who has heretofore been, or who may hereafter be suspended or disbarred, and after a period of probation, suspension or disbarment, he wishes to be reinstated, he may present his petition for reinstatement to the Board of Commissioners and when said petition so presented is granted by said board through its written endorsement on said petition then said disbarred or suspended member is authorized to file his petition in either the chancery or circuit court; or said suspended or disbarred member shall have the right to file a separate and independent petition seeking reinstatement before the chancellor or the circuit judge of the county of the residence of said suspended or disbarred member, and when petition in either case has been filed, a written notice shall be served the same as summonses are served, upon the secretary of the Mississippi State Bar, at least ten days before the hearing, notifying him that said proceedings have been instituted, whereupon the said secretary shall notify the Board of Commissioners, who shall attend the hearing or have a representative attend the hearing, for the purpose of representing the State Bar in such proceedings.
Also a part of the 1932 State Bar Act is the present Mississippi Code 1942 Annotated section 8716 (1956), which provides that the circuit or chancery court of the county in which the party whose interest is involved resides, shall have exclusive original jurisdiction in all matters pertaining to disbarment, but either party may appeal to the Supreme Court. In our opinion, Code section 4004-23 (Supp. 1966) giving the judges of the circuit and county courts power to suspend sentence and place defendants on probation is not applicable to the matter of mandatory disbarment of an attorney upon conviction of a felony. The power to suspend sentence is limited "to suspend the imposition or execution of sentence" as provided by said section 4004-23. The Provision with reference to disbarment of an attorney upon conviction of a felony and the provision for the proceedings for reinstatement are in the chapter of the Code on "Professions and Callings," specifically, the chapter on "Attorneys."
7 Am.Jur.2d Attorney at Law section 53 (1963) is in part as follows:
In the absence of a controlling statute, it has been held that granting probation to an attorney convicted of a crime does not affect the question whether the attorney should be suspended or disbarred because of the conviction.
See also Annotation, 132 A.L.R. 659 (1941).
In our opinion the power of the circuit judge to suspend sentence does not empower him to suspend the order of disbarment. The disbarment order is a part of the punishment but it is not a part of the sentence which the circuit judge metes out and may suspend. The order of disbarment automatically follows conviction. We are of the opinion that the legislature never contemplated that a lawyer convicted of a felony would be allowed to continue practice under the direction of a probation or parole officer. The probation and parole statute is concerned with punishment and rehabilitation, while the statute requiring the disbarment of an attorney upon conviction of a felony is concerned with guilt. Reinstatement of a disbarred attorney under section 8714 is an entirely different matter from probation and parole. We are therefore of the opinion and so hold that the circuit judge erred in suspending the order of disbarment, and that part of the judgment of conviction is reversed and the order of disbarment is reinstated.
This is a lamentable case, one which generates regret. It is lamentable that a member of the bar would so conduct himself *530 as to be found guilty of a felony in the representation of his client. It is regrettable that because of this violation the attorney must be disbarred. But the practice of law is a sacred trust, accorded only to a properly qualified attorney. As an officer of the courts he must keep that trust inviolate. When he desecrates that trust and violates the laws controlling, he has, upon conviction thereof, terminated his right to represent clients and practice the great and honorable profession of law.
On direct appeal the judgment of conviction is affirmed. On cross appeal the suspension of the disbarment order is reversed and the order of disbarment is reinstated.
Affirmed on direct appeal; reversed and rendered on cross appeal.
All Justices concur.