BLAKENEY *v.* STATE

No. 39733 October 17, 1955 82 So. 2d 714

*Barnett, Jones & Montgomery*, Jackson, for appellant.

*Wm. E. Cresswell, Asst. Atty. Gen.*, Jackson, for appellee.

KYLE, J.

The appellant Clifton Blakeney was indicted by the grand jury in the Circuit Court of the Second Judicial District of Jones County on a charge of forgery. The case was transferred to the county court, and the appellant was tried and convicted at the July 1954 Term of the Court, and was sentenced to imprisonment in the state penitentiary for a term of five years. From that judgment he prosecutes this appeal.

The testimony of the State's witnesses was substantially as follows: Herbert H. Haigler, Agent for the United Insurance Company, testified that on or about February 24, 1954, the appellant came to his office in the Embrey Building, in the City of Laurel, for the purpose of paying two monthly insurance premiums amount-

ing to $15, which were then past due. The appellant presented a check to Haigler for the sum of $35 drawn on the Mount Olive Bank, of Mount Olive, Mississippi, and payable to the order of "Clifton Blakeney." The check bore the signature of "E. A. Savelle" as drawer, and was duly endorsed by the appellant. Haigler issued a receipt for the $15 covering the two insurance premiums, and paid to the appellant the sum of $20 in cash. Haigler later negotiated the check to the Manhatten Cafe in Laurel and the manager of the cafe deposited the check with the First National Bank of Laurel for collection. The First National Bank forwarded the check to the Mount Olive Bank for payment. A few days later the check was returned unpaid, with a notation on the back of the check that the drawer had no funds on deposit and no account with the bank.

Earl B. Hinton, president and cashier of the Mount Olive Bank, testified that E. A. Savelle had no money on deposit in the Mount Olive Bank at the time the check for $35 was presented for payment, and had never had an account with the bank. In answer to questions propounded to him by the State's attorney, Hinton testified that he had had many years experience in the identification of signatures and handwriting. He was then asked to examine the $35 check, which had been admitted in evidence as an exhibit to the testimony of Herbert H. Haigler, and tell the jury whether or not all the writing on the check was in the same handwriting as the signature of the payee endorsed on the back of the check. He was also asked to examine the appellant's signature on the appearance bond filed in this cause and state to the jury whether the handwriting on the check was the same as that of the signature on the bond. After examining the check and the bond, the witness stated that in his opinion the handwriting on the check, including the names of the payee and the drawer, and the endorsement of the payee's name on the back of the check, were made

by the same hand, and that the handwriting on the check was the same as the handwriting on the bond.

Two other checks, purporting to bear the signature of E. A. Savelle as drawer and payable to the appellant were offered in evidence. The testimony relating to these two checks was substantially as follows: J. T. Skinner, a furniture salesman for Rhodes Furniture Company, testified that on December 16, 1953, the appellant, who was known as "Clifton Blakeney" or "William C. Blakeney", came into the Rhodes Furniture Company store in the City of Laurel and gave the company a check for $365 for a cash payment on a cedar robe and $20 on his wife's account. The check was drawn on the Mount Olive Bank and was payable to "William C. Blakeney" and was signed "E. A. Savelle" and was endorsed by the appellant. There was a notation on the check in words and figures as follows: "365 yd gravel hauling." The witness stated that the check was deposited by the furniture company for collection and was returned unpaid. J. F. Weller, an employee of the American National Insurance Company, testified that the appellant came to the office of that company on January 6, 1954, to pay a premium on an insurance policy, and gave the cashier a check for $20 drawn on the Merchants and Farmers Bank, of Forest, Mississippi, by "E. A. Savelle." The check was payable to "Clifton Blakeney". The cashier accepted the check after it had been endorsed by the appellant and deposited the same for collection, but the check was returned by the bank upon which it was drawn with a notation on the back "no account."

Earl B. Hinton was then recalled as a witness for the State and was asked to examine the handwriting and signatures on the $365 check and the $20 check and compare the same with the handwriting and signature on the $35 check. After examining the checks and making the comparison, the witness stated that in his opinion all three checks were in the same handwriting and were written by the same hand.

Mack Kelley, a deputy sheriff of Covington County, testified that a subpoena for E. A. Savelle had been issued and placed in his hand for service by the Circuit Clerk of Jones County commanding Savelle to appear and testify as a witness in the case at the June 1954 Term of the court, and the process had been returned "not found." The witness stated that he had served as deputy sheriff of Covington County for a period of six years and had never heard of a man by the name of E. A. Savelle. Morgan Holifield, the sheriff of Jones County, testified that he had never heard of a man by that name and had never had any contacts with a man of that name, but that about one month before the trial he had received a registered typewritten letter, addressed to him as sheriff and postmarked Raleigh, Mississippi, June 23, 1954, which bore the typewritten signature "E. A. Savelle, Raleigh, Miss." The writer enclosed $35 in currency and requested that the money be used to pay off the $35 check on the Mount Olive Bank payable to Clifton Blakeney.

The State's theory of the case at the beginning of the trial was that the check referred to in the indictment was a forged instrument, forged and uttered by the appellant with intent to defraud, and that E. A. Savelle, whose name appeared on the check as the drawer, was a fictitious person.

At the conclusion of the State's testimony, however, J. B. Blakeney, an uncle of the appellant, who was called to testify as a witness for the appellant, testified that he was personlly acquainted with E. A. Savelle, who lived at Raleigh, in Smith County, and had lived there all his life.

E. A. Savelle was then produced and testified as a witness for the appellant. Savelle stated that he lived about two miles east of Raleigh and was engaged in logging and other activities, and that he had worked with Clifton Blakeney at one time. He stated that he had bought a cow from Clifton Blakeney sometime during the latter part of February, and had agreed to pay $35

for the cow. When the cow was delivered to him, he told Blakeney to write a check for $35, but he did not tell Blakeney to draw the check on the Mount Olive Bank. He had no money in that bank. He assumed that Blakeney would draw the check on the Raleigh Bank, as his home was in Raleigh. He found out about the check about five or six weeks before the trial, when Blakeney came to see him about the matter, and he then mailed Sheriff Holifield the money with which to pay the check. He was asked whether he had authorized Blakeney to draw checks on him. His answer was, "Well I have told him he could different times, but this is the only time that I have ever knowed him to do it."

The witness was subjected to a rigorous cross-examination by the State's attorney. The check was exhibited to him, and he was asked whether he had authorized the appellant to sign the check which was drawn on the Mount Olive Bank. His answer was, "I authorized him to write a check. * * * I didn't tell him what bank to sign it on. * * * Wasn't nothing said about what bank." He stated that he had never authorized Blakeney to draw any check on the Mount Olive bank, and that he had never authorized him to sign one on the Forest bank. He was then questioned about the $365 check which the appellant had negotiated to the Rhodes Furniture Company at Laurel on December 16, 1953, and which purported to have been issued for hauling 365 yards of gravel. He said that he had told Blakeney that he could write a check for whatever the gravel was. He did not tell him what bank to write it on. He stated that Blakeney had never told him what the amount was that he owed him for hauling the gravel, and that Blakeney had never mentioned the $365 check to him.

The first point argued by the appellant's attorneys as ground for reversal on this appeal is that the court erred in refusing to grant certain instructions requested by the defendant and shown on pages 20, 21, 22 and 23 of the record. The instruction appearing on

page 21 of the record, however, is an exact copy of the defendant's instruction shown on page 15 of the record, which the court granted, and there was no error in the refusal of the court to grant the same instruction twice. ██ █ In the other three instructions, which the court refused to grant, the court was requested to instruct the jury that it was their duty to find the defendant not guilty, unless they believed beyond every reasonable doubt and to the exclusion of every other reasonable hypothesis that the defendant was guilty. We think there was no error in the court's refusal to grant these three instructions. The evidence in this case was not entirely circumstantial, and, as the Court said in its opinion in Pettus v. State, 200 Miss. 397, 27 So. 2d 536, "It is only in cases, as a general rule, where the evidence is entirely circumstantial that the jury should be required to exclude every other reasonable hypothesis than guilt before a conviction can be had." If the words "to the exclusion of every other reasonable hypothesis" had been omitted in each of the above mentioned instructions, the refusal of the court to grant the instructions would not have constituted reversible error, for the reason that the court granted other instructions embodying the same principles of law.

 It is next contended that the court erred in granting to the State the instruction which appears on page 24 of the record. In that instruction the court undertook to set forth the essential elements of the crime charged in the indictment. The instruction appears in the record as follows:

"The Court instructs the Jury for the State that if you believe beyond a reasonable doubt from all the evidence in this case that Clifton Blakeney did wilfully, unlawfully, feloniously, falsely, fraudulently and knowingly make, write and forge a certain bank check purported to be made and issued by E. A. Savelle as follows to-wit:

Mount Olive, Miss. Feb 24, 1954, No._____
MOUNT OLIVE BANK 85-354

PAY TO THE
ORDER OF Clifton Blakeney $35.00

Thirty Five and No/100_____Dollars
 E. A. Savelle

but said check had not in truth and in fact been so
issued by the said E. A. Savelle, with the felonious
and fraudulent of the said defendant to cheat
and defraud the said Mount Olive Bank, a corporation,
H. H. Haigler, Manhattan Cafe, Incorporated, a cor-
poration and Louis Morris of the sum of $35 in current
and lawful money of the United States of America,
then it is your sworn duty to find the defendant guilty
as charged in the indictment."

The indictment charged that the forgery was committed
"with the felonious and fraudulent intent of the said
defendant to cheat and defraud the said Mount Olive
Bank." The jury should have been instructed that proof
of such "felonious and fraudulent intent" was necessary
to establish the defendant's guilt. It can be readily seen
that the instruction, as it appears in the record, is defec-
tive in that the word "intent" which should have been
inserted after the words "with felonious and fraudu-
lent", was inadvertently omitted; and it is vigorously
argued on behalf of the appellant that the omission of
the essential element of "intent" to defraud in the in-
struction constitutes reversible error. But we think the
error complained of did not result in substantial preju-
dice to the appellant and was not so serious as to require
a reversal of the judgment of the lower court. Hatten v.
State, 150 Miss. 441, 116 So. 813. In the instruction the
jury was told that they must believe that the defendant
forged the check "feloniously, falsely, fraudulently and
knowingly," and that he did so to "cheat and defraud";
and, in our opinion, the jury was not misled by the
omission of the word "intent" in the instruction.

■■ It is next argued that the trial judge committed reversible error when at one time during the examination of the witness Savelle he referred to the witness in the presence of the jury as the "defendant." But there is no merit in this contention. The jury was neither misled nor prejudiced by the mistaken reference to the witness as the "defendant."

■■ Finally, it is argued that the court erred in over-ruling the appellant's motion for a new trial on the ground that the verdict was against the overwhelming weight of the evidence. But we think there was no error in the action of the trial judge in overruling the appellant's motion for a new trial. The State's proof was sufficient to show that the check for $35 drawn on the Mount Olive Bank, including the signature of the pretended drawer, was written in the handwriting of the appellant. Savelle testified that he did not sign the check and that he had never authorized the appellant to draw a check for him on the Mount Olive Bank.

It is true that Savelle testified that he had authorized the appellant to draw a check on him for the sum of $35 for the payment of the purchase price of a cow. But Savelle's statement that he had authorized the appellant to draw a check on him for $35 for the payment of the purchase price of a cow was discredited by Savelle's own admission and other parts of his own testimony, and the jury was not required to accept that statement as true, if, after considering all the evidence in the case, the jury believed the statement to be untrue. Savelle admitted that he lived at Raleigh, in Smith County, and that he had no money on deposit in the Mount Olive Bank and had never authorized the appellant to sign his name to a check drawn on the Mount Olive Bank. And Savelle stated that he knew nothing about the $35 check referred to in the indictment until the appellant came to Raleigh to see him about the matter after the indictment was returned by the grand jury. The president of the Mount Olive Bank testified that Savelle had never had an ac-

count with that bank. Under these circumstances, the jury had a right to believe that Savelle had not authorized the appellant to draw the check or sign his name to the check for $35, and that the appellant did not sign Savelle's name to the check pursuant to any such pretended authority.

The question of the appellant's guilt or innocence, under the facts testified to by the witnesses in this case, was a question for the jury to decide; and we think that it cannot be said that the verdict rendered was against the overwhelming weight of the evidence.

We find no reversible error in the record, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P.J.,* and *Lee, Ethridge* and *Gillespie, JJ.,* concur.