455 So.2d 750 (1984)
Samuel Newton HOLLIDAY, III
v.
STATE of Mississippi.
No. 54258.
Supreme Court of Mississippi.
July 18, 1984.
Rehearing Denied September 26, 1984.
*751 John W. Christopher, Canton, for appellant.
Bill Allain, Atty. Gen. by Walter L. Turner, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PATTERSON, Chief Justice, for the Court:
In the Circuit Court of Madison County, Samuel Newton Holliday, III was tried on a charge of murder and convicted of manslaughter. The court imposed a sentence of twenty (20) years in the custody of the State Department of Corrections with five (5) years suspended.
Holliday appeals, assigning the following as error:
I. The court erred in admitting into evidence colored, photographic slides, appearing as Exhibits 7 and 8.
II. The verdict was against the great weight of the evidence and the law governing the crime of murder and/or manslaughter.
III. The trial court committed reversible error in refusing to grant Appellant's Instruction D-2.
On the morning of July 23, 1981, Grace Holliday entered the bedroom of Stella Holliday, and found her dead of a gunshot wound to the chest. Stella Holliday was her son's ex-wife.
Responding to Mrs. Holliday's call, Officer Charles Sullivan of the Canton Police Department found Stella's body lying in the middle of her bed with a pistol by her side. The teenage son of the deceased had covered her body with a bedspread. Investigation revealed no sign of a struggle in the bedroom and no indication of forced entry of the house. The testimony discloses, however, a sliding glass patio door was unlocked. Neither fingerprints nor smudges were found on the pistol.
At trial the state called several witnesses to refute defense counsel's suggestion on opening statement that Stella Holliday committed suicide. Emily Endris and Helen Gregory testified that Stella had been in good spirits the night before at their regular bridge game. Gregory testified further that Stella had told her Newton Holliday, III, had threatened her and that she was afraid of him.
To further rebut the intimation of suicide, forensic scientist Michael Allen testified that in his opinion the weapon found on the bed had fired the projectile found in a wall of the room and that this particular gun would leave a heavy deposit of lead residue when fired at fewer than 18 to 24 inches. Since there was little such residue on the blouse Stella Holliday was wearing at the time of her death, Allen concluded that (1) the distance between the victim and the gun at the time of the shooting was greater than 18 to 24 inches; or (2) some object was between the victim and the weapon at the time of the shooting. No such object was found. FBI tests revealed gunshot primer residue on Stella's hands but were inconclusive as to whether her hands were on or simply near the firearm at the time it discharged.
Dr. Rodrigo Galvez, who performed the autopsy, cast further doubt on the defense's position by testifying that at the time of the shooting the gun was between one foot and three feet from the victim's chest.
*752 Highway Patrol Investigator Jimmy Boxx testified further he found in the ashtray beside Stella Holliday's bed two cigarette butts of the brand smoked by Holliday. Boxx interviewed Holliday twice, on July 25 and again on July 28, and received conflicting information from him. First, on July 25, Holliday told Boxx he owned a gun fitting the description of the one found on Stella's bed, but that he had not seen the weapon in a year and a half. On July 28, however, Holliday claimed to have seen the gun during the past two weeks. Secondly, Holliday told Boxx on July 25 that it had been weeks, perhaps months, since he had been in his ex-wife's bedroom, on July 28, he admitted he was there the Tuesday before Stella's body was found on Thursday.
Highway Patrol Investigator Donald Bray testified Holliday admitted having threatened Stella hundreds of times.
The most damaging testimony from the defendant's point of view was elicited from Prentiss Hawkins, the husband of Grace Holliday's sister. Hawkins testified he accompanied his wife and son to Holliday's house at approximately 10:00 a.m. on July 23. Holliday, who was drinking heavily at the time, was holding a pistol and speaking of shooting himself with it. More significantly, Hawkins testified he overheard a conversation between Holliday and his son, Stanley Holliday. According to Hawkins,
A. He answered Stan when Stan said it was a bullet from the 38 Special that killed his mother. Mr. Hollidays [sic] said, "It was the other 38 that killed her. I ought to know, I pulled the trigger."
Holliday testified he neither made this statement nor shot Stella, although he did admit he owned the gun found on Stella's bed. Holliday testified he had a stormy relationship with his ex-wife and that they had been in disagreement over the disposition of a jointly held parcel of land.
Holliday first raises the issue of admission into evidence of two color slides depicting the victim and the scene of the crime. When the state sought to introduce these slides, the defense objected on the ground they had no probative value in view of a photograph which had previously been admitted without objection. Being of the opinion that two of the slides had independent evidentiary value, the court overruled the objections accordingly and admitted them into evidence.
Holliday now contends these slides had no probative value and that their gruesomeness served only to inflame the jury.
The admissibility of photographs is largely a matter within the trial court's discretion, and the fact that a photograph is grisly does not render it incompetent so long as it has legitimate evidentiary value. Sharp v. State, 446 So.2d 1008 (Miss. 1984). Since these slides depict the entry wound and the bullet hole in the wall, which were not shown in the first photograph, we cannot hold the slides were without probative purpose. However, we emphasize the issue of prejudice arising from the admission of gruesome photographs is very serious, and prosecutors and trial judges are advised to use great caution in this area.
Holliday's second argument is the verdict was against the overwhelming weight of the evidence. While acknowledging the closeness of this case, we must accept as true all the evidence which supports the state's position and therefore are unable to conclude the verdict should be set aside. Sadler v. State, 407 So.2d 95, 97 (Miss. 1981).
Finally, Holliday contends the court erred in refusing to instruct the jury that the state was required to prove Holliday guilty beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence. He cites Sisk v. State, 260 So.2d 485 (Miss. 1972), wherein we held where the state's case is based on circumstantial evidence, the jury should be instructed that they are required to believe the defendant guilty beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis.
In our opinion, one piece of direct evidence prevents this case from being characterized *753 as one based entirely on circumstantial evidence: that is the testimony by Prentiss Hawkins that he heard Holliday admit shooting his ex-wife. While we think the better practice is to give an instruction such as D-2 in a case where there is very little direct evidence, we cannot here hold the trial court in error for failing to do so.
Having reviewed the record, we conclude the case is a close one but contains no reversible error. Therefore we affirm.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.