515 So.2d 845 (1987)
William MONTGOMERY
v.
STATE of Mississippi.
No. 56743.
Supreme Court of Mississippi.
August 19, 1987.
Rehearing Denied December 9, 1987.
James O. Ford, Ford & Ford, Tupelo, James D. Minor, Oxford, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
EN BANC:
PRATHER, Justice, for the Court:
The sufficiency of circumstantial evidence is in issue on this appeal from the Circuit Court of Pontotoc County, wherein William Montgomery was found guilty of the murder of Richard Ball. Montgomery, a recidivist, was sentenced to life imprisonment without benefit of probation or parole. On appeal Montgomery challenges the sufficiency of the circumstantial evidence upon which the jury based their verdict. After a thorough review of the evidence, this Court affirms the guilty verdict and life sentence.
The appellant assigns as error the failure of the trial judge to change venue from Pontotoc County because of pretrial publicity, the introduction of physical evidence obtained in an improper search of the defendant's home, and the introduction of prejudicial photographs. The Court has examined this record carefully and finds no merit to these assignments. The additional assignment challenging the sufficiency of the circumstantial evidence to support the verdict of guilt warrants discussion.

I.
The victim, Richard Ball, was executive director of the Pontotoc Housing Authority. His office was located at the housing project 100-150 yards from the apartment of William Montgomery, a caretaker and maintenance man employed by the Authority. Montgomery was an ex-marine with knowledge and skill of firearms and munitions.
The State carefully developed the proof to establish motive. Several witnesses testified that although they had never heard cross words between Montgomery and Ball, several people were aware of ongoing animosity between the two over a wage dispute for Ball's failure to pay minimum wages. Herbert Todd, a resident of the project testified that Montgomery had stated that Ball and the Housing Authority owed him $17,000 and that after he filed a complaint to the Housing Authority, he would soon own the facility. According to Todd, Montgomery stated he had "no use" for Ball and "hated his guts". After Montgomery received a settlement in response to his claim, Ball, who adjusted the tenants' rent based on income, increased Montgomery's rent from $85.00 to $276.00 per month. Also, subsequent to the filing of the complaint by Montgomery, Ball required *846 Montgomery to start signing in and out of the office on a time sheet.
The State, supported only by circumstantial evidence, presented the following evidentiary factors tracing the weapon's purchase and the defendant's whereabouts on the date of and immediately preceding the murder.
Robert Montgomery, the defendant's eighteen year old son, testified that at 5:00 p.m. on Friday, April 6, 1984 William Montgomery sent him to the Wal-Mart to buy a .22 caliber gun. Robert was under age, but Charles Walls, a friend of Robert's, offered to use his fake identification to purchase the gun and shells with a $100 bill given to Robert by the defendant. Robert testified that he gave the gun to his father and never saw the gun again.
Ball's daily procedure was to go to the office after buying a newspaper, to drink a cup of coffee while reading the newspaper and then go get the mail.
On April 10th, Ball left his home for work at approximately 7:20 a.m. in his truck. His checkbook and newspaper were found on his desk.
After 6:00 p.m. on that date Mrs. Paulette Ball became worried when her husband did not come home. She went to Montgomery's house to ask Montgomery if he had seen Mr. Ball; Montgomery was there and said "No". About 8:00 p.m. Paulette Ball obtained an extra key to the office from Mrs. Poe, the secretary, and went with Billy Joe Sewell, a member of the board of directors for the Housing Project, to check the HUD office. Upon entering, Mrs. Ball and Sewell noticed Mr. Ball's paper and checkbook on the desk, as well as three Camel cigarette butts in the commode. Mr. Ball allowed no smoking in the HUD office. As they entered the hall leading to the shop area, Mrs. Ball saw a wheelbarrow and the contorted figure of her husband within. The police were called, and Mrs. Ball told the police that she suspected Mr. Montgomery because of the difficulties between her husband and Montgomery.
During police investigation of the office, one spent shell cartridge from a .22 gauge gun was found in the front office and a fragment of Mr. Ball's scalp was located on the hall floor. The police took Mr. Montgomery into custody for questioning while other officers went to Montgomery's residence. Officer Larry Poole and assistants were invited into the Montgomery apartment by Mrs. Montgomery and Poole asked Mrs. Montgomery if they could "look around". Mrs. Montgomery escorted the officers back to William Montgomery's room where they located a .22 bullet in a drawer along with a diary which contained a time schedule of Richard Ball's normal morning procedure. Also listed in the diary was an entry of the serial number of the .22 caliber Ruger rifle purchased by Montgomery's son the previous Friday. At trial Montgomery testified that the live cartridge was found by him while cleaning an apartment and he had used a pin to punch the holes in the nose of the cartridge.
Upon his arrest Montgomery stated that he had never owned a gun, had never purchased a gun and was only considering the purchase of the Ruger .22 caliber listed in his diary. However, the manager of the store reported that no serial numbers are ever listed on advertising circulars indicating that Montgomery must have obtained the serial number of the gun from the gun itself.
However, on the stand at trial, Montgomery admitted that he had purchased the gun and had given his son the money to buy it since he knew his criminal record would prohibit him from buying a weapon. The murder weapon used to kill Ball was never found.
Montgomery testified that the gun was purchased so that his son could go hunting but his son never saw the gun after purchasing it on April 6th. Montgomery stated that the gun had been stolen from his home on Sunday, April 8th when his family had traveled to Oxford for the day. But he never reported the theft to his family or the police.
Montgomery testified that on the day of the murder he did not go to the office but that he had assisted one resident in hanging *847 a picture, that he policed the HUD area, gathered garbage, and came back home. Montgomery stated that he did not commit the murder, that he did not know the party responsible for Ball's death, and that the last time he saw Richard Ball was about 5:00 p.m. on the day before the murder. One witness for the defendant, Mrs. Myrtle Griffin, testified that she saw the victim on the street about 1:00 o'clock on the day of the murder.
Witnesses traced Montgomery's whereabouts on the day of the murder. Ball's truck was found on a path in the woods about 200 yards from Ball's home. The truck was seen at this location at approximately 10:20 a.m. by Mr. Earl Huey. Two employees at Comfort Care testified they saw Montgomery walking back from this area toward the HUD housing facility about 1:00 p.m. Montgomery had worked on Ball's land and was familiar with the path area on Ball's property. Mr. Todd, another neighbor, testified that he saw Montgomery walking to and from the shed on Gilliam's property about mid-morning on the day of the murder. This shed area became significant when Mr. Gilliam, Montgomery's neighbor, testified that he found three boxes of .22 caliber gauge ammunition and a clip containing eight bullets thrown by the shed beneath some vines. No fingerprints were found on the ammunition boxes or metal clip found by Mr. Gillian's shed, but they contained a Wal-Mart sticker, and were located some thirty-nine paces from Montgomery's apartment. These items were not located until June 1st following the murder on April 10th. Two boxes of bullets were completely filled and the third box was missing fifteen rounds. Eight .22 caliber cartridges were found in the Ruger clip. The State contends that the remaining seven bullets consisted of five bullets removed from Ball's body, one was extracted from the veneer of the door of the maintenance shop, and one bullet was found in Montgomery's top drawer. Montgomery admitted he knew that a hollowed point would fragment on impact, and fragments removed from Ball's body were in a fragmented state. Montgomery's freshly laundered coveralls were seen hanging out to dry in his back yard that morning by Mr. Todd. However, microanalysis tests on Montgomery's coveralls revealed no blood, hair, or fiber of Richard Ball. Additionally, no glass particles from the window were located on Montgomery's boots.
The State contends that Montgomery went to the Housing Authority office early that morning and had broken in by shattering the back window and forcing the window open. According to Billy Joe Sewell, Montgomery did not have a key to the facility since Richard Ball had ordered that the locks be changed. Mrs. Poe, the HUD secretary, testified that the door to the maintenance room locked when it closed and could not be opened from the maintenance room side without a key. A machete was used to force open the door from the shop area into the front office. Paint chips found on the machete were found to be of the same quality as those in the door area and according to the Mississippi Crime Lab expert, the machete could have come into contact with the door. Montgomery's fingerprint was found on the facing of the door leading from the shop area into the office area. Other fingerprints belonging to Montgomery were located on a tool tray inside the maintenance room, and on a metal can containing insecticide in that same area. The defense pointed out with much emphasis that only 5 of 32 fingerprints lifted from the scene of the crime were positively identified as those of William Montgomery, and that, as an employee, his prints would normally be found in the shop area.
The State theorized that Montgomery was the murderer and that as Montgomery waited for Ball in the bathroom, he smoked three Camel cigarettes, his customary brand, and dropped them into the commode. As Richard Ball entered the building, he went into his office, and then into the hall area towards the shop. At this point, the State contends Montgomery came out of the restroom and shot Richard Ball several times in the upper arm area and at least twice in the head. One bullet missed and lodged in the door. A projectile *848 removed from Ball's body was determined to be a .22 caliber bullet. Ball's feet were tied and he was dragged down the hall, where his body was placed in a wheelbarrow. Mr. Ball bled profusely, so the murderer tried to clean up using a mop which he later placed in the wheelbarrow by the body. According to expert testimony Ball's death was caused by gunshot wounds to the head, neck, and axilla at approximately 8:00 a.m.

II.
This Court only addresses the claim that all inferences to be drawn from the circumstantial evidence are insufficient to prove that the defendant was guilty of murder.
When the State's case is based entirely upon circumstantial evidence the State is required to prove the defendant guilty not only beyond a reasonable doubt but to the exclusion of every reasonable hypothesis consistent with innocence. Fisher v. State, 481 So.2d 203 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1984). Circumstantial evidence need not exclude every "possible doubt" but only every other "reasonable" hypothesis of guilt. Tolbert v. State, 407 So.2d 815 (Miss. 1981). A mere fanciful or farfetched or unreasonable hypothesis of innocence is not sufficient to require an acquittal. Baker v. State, 317 So.2d 901 (Miss. 1975).
In Sanders v. State, 286 So.2d 825, 828 (Miss. 1973), cited in Hester v. State, 463 So.2d 1087, 1091 (Miss. 1985), this Court cautioned:
Each case must be determined from the circumstances shown in the testimony and of course the facts must consistently point to but one conclusion, that is to say guilt.
When reviewing a jury verdict of guilty we are required to accept as true all the evidence favorable to the State, together with reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such will support a verdict of guilty beyond reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, then the jury verdict shall not be disturbed. Hester, 463 So.2d at 1091; Carroll v. State, 396 So.2d 1033, 1035 (Miss. 1981).
Accepting as true the evidence favorable to the State, together with reasonable inferences, this Court evaluates what the jury was shown to prove that Montgomery murdered Richard Ball.
Looking to the evidence presented, this Court is convinced that the circumstantial evidence presented is sufficient to support the jury verdict of guilt. Evidentiary factors lending credibility to the verdict include (1) the existence of motive, several witnesses testified to a turbulent relationship between Ball and Montogmery; (2) the purchase and serial number of the Ruger rifle: Montgomery, though initially denying he ever owned a gun, admitted purchasing the gun, the serial number of the Ruger was listed in the ledger found in Montgomery's room; (3) the diary: located in Montgomery's diary was a schedule of Richard Ball's morning procedure and whereabouts; (4) the number of bullets: bullets extracted from Richard Ball's body plus those bullets found in Montgomery's drawer, the door facing, and those remaining in the Ruger clip were of the same type, account for the fifteen bullets missing from the box of ammunition found near Gilliam's shed; (5) Montgomery's whereabouts: by his own admission Montgomery was in the area of the HUD project the morning of the murder, Mr. Todd saw Montgomery walk down towards and back from Gilliam's shed at approximately 9:30 a.m.; Mr. Flemming and Mr. McWhorter saw Montgomery walking toward the HUD apartments on a route away from the area where Mr. Ball's truck was located; (6) the Camel cigarettes: Montgomery admitted he smoked Camel brand cigarettes  three Camel cigarette butts were found in Richard Ball's office commode; (7) the fingerprints: Montgomery's fingerprints were found on the door facing of the back door, forced open by use of the machete. Collectively, these factors support a verdict of guilt on circumstantial evidence. Again, this Court holds:
[I]f there is substantial evidence in the record of such quality and weight that, *849 having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions regarding the guilt of the defendant, we have no authority to disturb the jury's guilty verdict. See, e.g., Burge v. State, 472 So.2d 392, 396 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984). Here we are subject to the same limitations on our scope of review, only we are required to keep in mind the arguably stricter burden of proof placed upon the State in circumstantial evidence cases. See, e.g., Flanagin v. State, 473 So.2d 482, 485 (Miss. 1985); Hester v. State, 463 So.2d 1087, 1093, 1094 (1985). [Fisher v. State, 481 So.2d 203, 214 (Miss. 1985)].
The circumstances in this case support the verdict of guilty.
This Court therefore affirms the conviction.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., DAN M. LEE, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
WALKER, C.J., and ROBERTSON, ANDERSON and GRIFFIN, JJ., concur by separate written opinion.
ROBERTSON, Justice, concurring:
For many years this state has clung to the notion that criminal prosecutions relying in some part upon circumstantial evidence are somehow different from other prosecutions. A function of our perception of this difference has been a rather odd rule of law respecting the prosecution's burden of proof. In the ordinary criminal prosecution, the State must prove each element of the offense beyond a reasonable doubt. In circumstantial evidence cases, however, we say that the State must prove the defendant guilty beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence.
In Mack v. State, 481 So.2d 793, 796-97 (Miss. 1985), I explained many of the problems with this rule and urged its abolition in favor of a single burden of proof rule for all criminal cases, to-wit: that the prosecution must prove each element of the offense beyond a reasonable doubt. That opinion was joined by three of my colleagues.
In Mack we were concerned with a jury instruction: whether the so-called circumstantial evidence instruction should have been given. Today's problem arises in a different context. Here we are asked to consider whether the evidence of William Montgomery's guilt was sufficient that his conviction should be upheld. The majority opinion relies upon the same, redundant, confusing standard as was embodied in the jury instruction at issue in Mack.
In my view, the correct standard to be applied in this and all other criminal cases is
whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979). See also Harveston v. State, 493 So.2d 365, 370-71 (Miss. 1986); May v. State, 460 So.2d 778, 781 (Miss. 1984).
There are many problems with our attempt to redefine the burden of proof in some (we have never been clear just which) circumstantial evidence cases. We have never been able to identify with any precision the circumstances in which the rule should be applied. Does it apply when any element of the case is sought to be proved in whole or in part by circumstantial evidence or, does the rule apply only where the prosecution's case rests entirely upon circumstantial evidence? Careful, but not exhaustive, research reveals in a state of considerable disarray the rule some defend so staunchly, for we have found no less than eighteen articulations of the test for determining whether and when the circumstantial evidence burden of proof rule should apply. Some differ slightly from the others; some differ substantially. They form an aggregate hodgepodge.
These eighteen variations are:
*850 (1) The instruction is not required unless the State's case is based entirely on circumstantial evidence, Billiot v. State, 454 So.2d 445, 461-62 (Miss. 1984); Flemmons v. State, 419 So.2d 1034, 1036 (Miss. 1982); Weir v. State, 226 So.2d 733, 734 (Miss. 1969); Blakeney v. State, 225 Miss. 130, 82 So.2d 714, 717 (1955) Pettus v. State, 200 Miss. 397, 27 So.2d 536, 540 (1946).
(2) The instruction should not be given where guilt does not rest entirely on circumstantial evidence, Harmon v. State, 453 So.2d 710, 712 (Miss. 1984); Bullock v. State, 391 So.2d 601, 606 (Miss. 1980); Weathers v. State, 237 So.2d 441, 443 (Miss. 1970); Coward v. State, 223 Miss. 538, 78 So.2d 605, 610 (1955); Yarbrough v. State, 202 Miss. 820, 32 So.2d 436, 440 (1947).
(3) The instruction is only proper in cases of circumstantial evidence, King v. State, 315 So.2d 925, 926 (Miss. 1975); Cannon v. State, 190 So.2d 848, 850 (Miss. 1966); La Fontaine v. State, 223 Miss. 562, 78 So.2d 600, 604 (1955).
(4) Where the State's proof consists of circumstantial evidence, the State is required to prove its case to the exclusion of any reasonable hypothesis of innocence, Barrett v. State, 253 So.2d 806, 809 (Miss. 1971) (the Court here stated, "It is doubtful that this Court has ever reviewed a criminal case which is based on circumstantial evidence in toto," the implication being that if there is any circumstantial evidence the burden is higher).
(5) When the State relies substantially on circumstantial evidence, that evidence must be so completely conclusive as to have excluded every other reasonable hypothesis, Boyd v. State, 204 So.2d 165, 173 (Miss. 1967).
(6) Where evidence of guilt is largely circumstantial, the State is required to prove guilt to the exclusion of every other reasonable hypothesis, Guilbeau v. State, 502 So.2d 639, 641 (Miss. 1987); Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).
(7) The evidence in this case was so circumstantial as to require the giving of the instruction, Nester v. State, 254 Miss. 25, 179 So.2d 565, 566 (1965).
(8) When evidence of an essential element of the offense is wholly circumstantial the burden of proof is that such evidence must exclude every reasonable hypothesis other than guilt, Gilleylen v. State, 255 So.2d 661, 663 (Miss. 1971); Pitts v. State, 241 So.2d 668, 670 (Miss. 1970); Love v. State, 208 So.2d 755, 757 (Miss. 1968).
(9) When in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis, Westbrook v. State, 202 Miss. 426, 32 So.2d 251, 252 (1947).
(10) If the conviction rests upon circumstances and not direct proof, it is necessary to instruct the jury on the burden of proof in circumstantial evidence cases, and this is true, although some facts are shown by direct evidence, Gilleylen, 255 So.2d at 664.
(11) While we think the better practice is to give an instruction in a case where there is very little direct evidence, we cannot here hold the trial court in error for failing to do so, (the Court stated that a particular piece of direct evidence prevented this case from being characterized as one based entirely on circumstantial evidence), Holliday v. State, 455 So.2d 750, 752-53 (Miss. 1984).
(12) It is not necessary to give the instruction where there are merely some facts shown by circumstances, Gilleylen, 255 So.2d at 663-64.
(13) Where there is direct evidence of the crime the circumstantial evidence instruction is not required, Mack v. State, 481 So.2d 793, 795 (Miss. 1985) (here there was an admission).
(14) Where intent is the only element proven entirely by circumstantial evidence no instruction is necessary, Boches v. State, 506 So.2d 254, 260 (Miss. 1987); Tigner v. State, 478 So.2d 293, 296 (Miss. 1985); Williams v. State, 445 So.2d 798, 808 (Miss. 1984).
(15) Where the facts to establish guilt are in the main direct the instruction is not necessary, Mason v. State, 32 So.2d 140, 141 (Miss. 1947).
*851 (16) Where much of the evidence is direct the circumstantial evidence rule does not apply, Lumpkin v. State, 413 So.2d 386, 389 (Miss. 1982).
(17) Where a conviction is based upon eyewitness testimony, the refusal of the instruction is proper, Bunkley v. State, 495 So.2d 1, 4 (Miss. 1986); Collins v. State, 447 So.2d 645, 646 (Miss. 1984); Sanders v. State, 192 So. 344 (Miss. 1940); Purvis v. State, 14 So. 268, 269 (Miss. 1894).
(18) The instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged, Clark v. State, 503 So.2d 277, 279 (Miss. 1987); Keys v. State, 478 So.2d 266, 267-68 (Miss. 1985).
If the Court really has applied these eighteen different articulations of the test, then we have a problem of uneven administration of justice of major proportions.
I continue to believe that the circumstantial evidence rule and the perception upon which it is based is really much ado about nothing. It is simply redundant  repetitious, if you will  to say that an accused's guilt must be established, (1) beyond a reasonable doubt and (2) to the exclusion of every reasonable hypothesis consistent with innocence. These are two ways of saying the same thing, borne no doubt of the familiar lawyers' penchant for never using one word when two or three will do just as well. If an accused's guilt is establish to the exclusion of every reasonable hypothesis consistent with innocence, then it may be said that he has been found guilty beyond a reasonable doubt. Conversely, if the evidence has not excluded from the juror's mind a reasonable hypothesis consistent with innocence, it follows that the prosecution has not established gult beyond a reasonable doubt.
In Mack I explained that the Supreme Court of the United States had abandoned (as superfluous) the so-called circumstantial evidence instruction in Holland v. United States, 348 U.S. 121, 130-40, 75 S.Ct. 127, 137-38, 99 L.Ed. 150, 166-67 (1954). I listed eleven other states which had taken this same approach. See Mack v. State, 481 So.2d at 797. Further research has revealed that the rejection of the circumstantial evidence rule among our sister states has been far more massive than I had originally imagined.
The following states have abolished all distinctions between direct and circumstantial evidence. In each of these states both the instruction and the standard of review of the sufficiency of the evidence are the same regardless of whether the evidence is direct, circumstantial or both. Alaska: Stumbaugh v. State, 599 P.2d 166 (Alaska 1979); Allen v. State, 420 P.2d 465 (Alaska 1966). Arizona: State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970). Arkansas: Murray v. State, 249 Ark. 887, 462 S.W.2d 438 (1971). Colorado: People v. Bennett, 183 Colo. 125, 515 P.2d 466 (1973). Delaware: Henry v. State, 298 A.2d 327 (Del. 1972). Hawaii: State v. Bush, 58 Hawaii 340, 569 P.2d 349 (1977). Iowa: State v. Hilpipre, 395 N.W.2d 899 (Iowa App. 1986); State v. O'Connell, 275 N.W.2d 197 (Iowa 1979). Kansas: State v. Wilkins, 215 Kan. 145, 523 P.2d 728 (1974). Kentucky: Holland v. Commonwealth, 323 S.W.2d 411 (Ky. 1959). Maine: State v. Tait, 483 A.2d 745 (Me. 1984); State v. Cowperthwaite, 354 A.2d 173 (Me. 1976). Nevada: Bailey v. State, 94 Nev. 323, 579 P.2d 1247 (1978). New Jersey: State v. Ray, 43 N.J. 19, 202 A.2d 425 (1964); State v. Dancyger, 29 N.J. 76, 148 A.2d 155 (1959). New Mexico: State v. Brown, 100 N.M. 726, 676 P.2d 253 (1984); State v. Smith, 92 N.M. 533, 591 P.2d 664 (1979). North Carolina: State v. Beaver, 317 N.C. 643, 346 S.E.2d 476 (1986); State v. Adcock, 310 N.C. 1, 310 S.E.2d 587 (1983). Oklahoma: Hightower v. State, 672 P.2d 671 (Okl.Cr. 1983); Johnson v. State, 632 P.2d 1231 (Okl.Cr. 1981). Oregon: State v. Lerch, 296 Or. 377, 677 P.2d 678 (1984); State v. Draves, 18 Or. App. 248, 524 P.2d 1225 (1974). Pennsylvania: Commonwealth v. McCue, 338 Pa.Super. 117, 487 A.2d 880 (1985); Commonwealth v. Sullivan, 472 Pa. 129, 371 A.2d 468 (1977). Rhode Island: State v. Proulx, 419 A.2d 835 (R.I. 1980); State v. Roddy, 401 A.2d 23 (R.I. 1979). Texas: Rumph v. State, 687 S.W.2d 489 (Tex.Cr.App. 1985); *852 Hankins v. State, 646 S.W.2d 191 (Tex.Cr. App. 1981). Vermont: State v. Neale, 145 Vt. 423, 491 A.2d 1025 (1985). Washington: State v. Gosby, 85 Wash.2d 758, 539 P.2d 680 (1975). Wyoming: Blakely v. State, 542 P.2d 857 (Wyo. 1975).
In the following states the instruction must be given, however, at the appellate level, direct and circumstantial evidence are treated the same when judging the sufficiency of the evidence; Indiana  Freed v. State, 480 N.E.2d 929 (Ind. 1985); Marshall v. State, 438 N.E.2d 986 (Ind. 1982); Louisiana  State v. Camp, 446 So.2d 1207 (La. 1984) (an appellate court might find the reasonable hypothesis test useful, however, because the existence of a reasonable hypothesis raises a reasonable doubt); Maryland  Brooks v. State, 53 Md. App. 285, 452 A.2d 1285 (1982) (instruction must be given where evidence is wholly circumstantial); Metz v. State, 9 Md. App. 15, 262 A.2d 331 (1970); Tennessee  State v. Brown, 551 S.W.2d 329 (Tenn. 1977); Utah  State v. Lamm, 606 P.2d 229 (Utah 1980) (reasonable hypothesis test is used on appeal, however, it is simply another way of stating the beyond a reasonable doubt burden of proof); State v. Starks, 627 P.2d 88 (Utah 1981) (instruction must be given where the evidence is wholly circumstantial). In Massachusetts the instruction requirement was abolished, Commonwealth v. Kinney, 12 Mass. App. 915, 423 N.E.2d 1017 (1981).
I have tried not to repeat what I said in Mack. For the reasons stated there and above, and by reference to the power of the reasoning contained in the various cases cited in Mack and above, I would have us hold that the law should not pretend a distinction between direct and circumstantial evidence where none rationally exists. In Mack I argued that our juries should be instructed that the law makes no distinction between direct and circumstantial evidence but simply requires that, before convicting a defendant, the jury must be satisfied of the defendant's guilt of each element of the offense beyond a reasonable doubt from all of the evidence in the case. Here I would apply that same standard in reviewing the evidence for its legal sufficiency. When so viewed, the evidence is such that we have no alternative but to affirm.
WALKER, C.J., and ANDERSON and GRIFFIN, JJ., join in this opinion.