919 So.2d 67 (2005)
Billy Ray DUNAWAY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01810-COA.
Court of Appeals of Mississippi.
May 3, 2005.
Rehearing Denied July 26, 2005.
*69 Rebecca G. Taylor, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before LEE, P.J., MYERS and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Billy Ray Dunaway was found guilty of vehicular homicide. The Circuit Court of Pike County sentenced Dunaway as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections and to pay a $10,000 fine. On appeal, Dunaway challenges the sufficiency of the evidence and avers that certain evidentiary errors occurred that entitle him to a new trial.
¶ 2. We find no error and, therefore, affirm Dunaway's conviction and sentence.

FACTS
¶ 3. On January 25, 2002, Dunaway was living with his girlfriend Becky Hux and her eighteen-year-old son Edward Lloyd Hux (Lloyd). That evening, Dunaway and Lloyd visited The Point After, a lounge where Becky worked as a bartender. Becky observed that Dunaway was drunk. Dunaway and Lloyd left the lounge at approximately 8:05 p.m. As they were leaving, Becky saw Dunaway's white Chevrolet pickup truck parked in front of the bar. She asked Dunaway to allow Lloyd to drive because Dunaway was drunk. Dunaway replied, "[T]here [isn't] no m____ f ____ driving [my] truck but [me]." Becky observed Dunaway walking to the driver's side of the truck and Lloyd walking to the passenger's side; she then went back into the bar. Though Becky did not see Dunaway and Lloyd enter the truck, she observed them three to four feet away from the truck with Dunaway approaching the driver's side and Lloyd approaching the passenger's side.
¶ 4. At approximately 8:15 or 8:20 p.m., Jeremy Roberts was driving westbound on the McComb-Holmesville Road with his girlfriend, Eva Reeves. An oncoming white truck swerved into Roberts' lane and Roberts left the roadway to avoid a collision. The truck swerved to the right, exited the roadway, brushed against trees lining the road, and flipped over. Dunaway was thrown from the truck and received minor injuries. Lloyd was pinned beneath the passenger's side door. Lloyd and Dunaway were transported to Southwest Regional Medical Center, and Lloyd was pronounced dead shortly after their arrival. Dunaway's blood alcohol level was.266.
¶ 5. At the scene, Roberts heard Dunaway state that the truck was not his and that he did not know the boy. Dunaway told Reeves that he did not want to say anything because he did not want to get into trouble. When the authorities arrived, Dunaway told Officer Davis Haygood that he had not been driving and that he was unsure who had been in the truck with him.
¶ 6. Becky Hux testified that the truck belonged to Dunaway. She stated that, because Dunaway was approximately five feet, two inches tall, in order to reach the *70 gas pedal of the truck he customarily put the bench seat in its most forward position and sat on a pillow that he secured by partially tucking it beneath the seatback. Lloyd was six feet, three inches tall and two hundred and sixty pounds. Becky stated that, when Lloyd drove the truck, he put the bench seat in its most rearward position and did not use the pillow. Becky further testified that, the day after the accident, she retrieved her house keys from the wrecked truck. She noticed that the bench seat was in a forward position and Dunaway's pillow was in the driver's seat, partially tucked underneath the seatback. Officer Case, an accident reconstructionist, also observed that the bench seat was in a forward position close to the steering wheel. A corroborative photograph of the seat was admitted into evidence.

LAW AND ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN DENYING DUNAWAY'S MOTION FOR A JNOV OR A NEW TRIAL BECAUSE THE JURY'S VERDICT WAS BASED ON INSUFFICIENT EVIDENCE.
¶ 7. After the trial, Dunaway attacked both the sufficiency and the weight of the evidence by moving for a JNOV or a new trial. The trial court denied the motion. On appeal, Dunaway's statement of the issues cites error in the trial court's denial of his motion for a JNOV or a new trial, implicating both the sufficiency and the weight of the evidence. However, Dunaway entirely limits his appellate arguments to the trial court's denial of the motion for a JNOV. Therefore, we likewise restrict our analysis to the issue of error in the denial of Dunaway's motion for a JNOV.
¶ 8. A motion for a JNOV challenges the sufficiency of the evidence of each element of the offense. Edwards v. State, 469 So.2d 68, 70 (Miss.1985). In the instant case, the jury was instructed that, for a guilty verdict, it had to find that Dunaway caused the death of Lloyd Hux while operating a motor vehicle in a negligent manner and under the influence of intoxicating liquor. See Miss.Code Ann. § 63-11-30(5) (Rev.2004). The court deemed the case against Dunaway circumstantial and gave the jury a circumstantial evidence instruction requiring that, for a finding of guilt, it had to find each element of vehicular homicide beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. For purposes of this appeal, we assume without deciding that the trial court correctly subjected the State to the heightened burden of proof applicable to circumstantial evidence cases.
¶ 9. In reviewing the denial of a JNOV, we view all of the evidence in the light most favorable to the State, giving the State the benefit of all favorable inferences that reasonably may be drawn from the evidence. Edwards, 469 So.2d at 70. We must reverse if the evidence so considered favors the defendant on any element of the offense such that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt and, in a circumstantial evidence case, to the exclusion of every reasonable hypothesis consistent with innocence. Id.; Montgomery v. State, 515 So.2d 845, 848 (Miss.1987). We will affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" and excluding every reasonable hypothesis consistent with innocence. Edwards, 469 So.2d at 70; Montgomery, 515 So.2d at 848. Moreover, "[a] mere fanciful or farfetched or unreasonable hypothesis of innocence is not sufficient to require an acquittal." Montgomery, 515 So.2d at 848.
*71 ¶ 10. Dunaway argues that there was insufficient evidence that he was driving the truck at the time of the accident. Though no witness saw Dunaway driving, there was sufficient circumstantial evidence that he was driving to support his conviction. Becky Hux testified that, several minutes before the accident, Dunaway emphatically refused to allow Lloyd to drive the truck. She then witnessed Dunaway approach the driver's side and Lloyd approach the passenger's side. Becky further testified that after the accident the truck's bench seat was in the extreme forward position favored by Dunaway and the pillow Dunaway used to reach the gas pedal was in the driver's seat. The testimony of Officer Case and a photograph corroborated the fact that the seat was in a forward position after the accident. And, Becky testified that Lloyd never used the pillow or placed the seat in a forward position due to his large size. Moreover, Lloyd sustained injuries to the right side of his body and was found pinned beneath the passenger door, inviting the inference that he was in the right passenger seat during the accident. There was medical testimony that Lloyd did not sustain a chest injury from a steering wheel, further bolstering the conclusion that he was in the passenger seat. Viewing the evidence in the light most favorable to the verdict, there was sufficient circumstantial evidence from which the jury reasonably could have inferred that Dunaway was driving at the time of the accident.
¶ 11. Dunaway also avers that there was insufficient evidence that his negligent operation of the truck caused Lloyd's death. Dunaway correctly points out that the crime of vehicular homicide requires not only that the defendant became intoxicated before the accident but also that he performed a negligent act that caused the death of another. Joiner v. State, 835 So.2d 42, 43-44(¶ 5) (Miss. 2003). The negligence need not have been caused by the alcohol consumption. Id. at 44(¶ 5). Specifically, Dunaway contends that there was insufficient evidence that the truck crashed due to his negligent driving. Taking the evidence and all reasonable inferences therefrom in the light most favorable to the State, there certainly was sufficient evidence that Dunaway's negligent driving caused Lloyd's death. As discussed above, there was sufficient evidence that Dunaway was driving the truck during the accident. Several witnesses saw the truck traveling well in excess of the speed limit just before the accident. Roberts testified that the speeding truck swerved at his vehicle and then drove off the road and flipped over. Photographs showed trees that had been damaged when the truck left the roadway. This was sufficient evidence from which the jury reasonably could have inferred that Dunaway was negligently speeding and negligently lost control of the truck, resulting in Lloyd's death.
¶ 12. Dunaway also argues that the evidence did not exclude a reasonable hypothesis consistent with his innocence, specifically, that Lloyd was driving the truck "with deliberate suicidal tendencies and/or with reckless disregard for his life and lost control of the vehicle." The only evidence Dunaway cites in support of this hypothesis is Becky's testimony that Lloyd dropped out of college and moved back in with her because he did not want to commit suicide. It has been said of evidentiary sufficiency in circumstantial evidence cases:
[i]t is always insufficient where assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which vests mere circumstances with the force of truth. Whenever, therefore, the *72 evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such existence cannot amount to proof, however great the probability may be.
Hester v. State, 463 So.2d 1087, 1093 (Miss. 1985). Considering the evidence and all reasonable inferences in the light most favorable to the verdict, the suicide hypothesis is unreasonable. All of the circumstantial evidence indicated that Dunaway was the driver of the truck and Lloyd was the passenger, rendering the hypothesis inconsistent with the evidence. The evidence in this case was entirely sufficient to have permitted the jury's reasonable conclusion that Dunaway, driving while intoxicated, negligently wrecked the truck and caused Lloyd's death and, therefore, was guilty of vehicular homicide as defined by Mississippi Code Annotated section 63-11-30(5) (Rev.2004).

II. WHETHER DUNAWAY IS ENTITLED TO A NEW TRIAL BECAUSE IMPROPER AND MISLEADING EVIDENCE WAS PRESENTED TO THE JURY.
¶ 13. Dunaway argues that the trial court committed reversible error in the admission of evidence. This Court reviews the lower court's rulings on the admission or exclusion of evidence for abuse of discretion. Ladnier v. State, 878 So.2d 926, 933(¶ 27) (Miss.2004). An error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party. Id.; M.R.E. 103(a). We proceed to review Dunaway's evidentiary issues.

A. Improper admission of certain photographs.
¶ 14. The State offered into evidence eighty-one photographs of the accident scene and wrecked truck. Several of the photographs showed a cardboard beer carton and beer cans in the truck. The following exchange occurred:
By Mr. Luckett: Your Honor, we would object to some of the photos, particularly the ones with the beer cans unless he can somehow connect them to this incident.
By Mr. Smith: At this time I believe I can lay ... at this time to save time, I will remove....
By Mr. Luckett: Other than that, Your Honor, we're fine. He will be offering it at a later time.
By the Court: Very well, let them be marked and received into evidence.
¶ 15. All eighty-one photographs were admitted. Dunaway argues that the admission of the photographs showing the beer cans and carton was error because the photographs were more prejudicial than probative. He also argues that prosecutorial misconduct occurred because the State promised to remove the offending photographs and then failed to do so.
¶ 16. The trial transcript shows that Dunaway failed to preserve the arguments he urges on appeal. Dunaway's objection to the beer can photographs was conditioned on the State's being unable to connect the beer cans to the accident. See M.R.E. 104(b). The State indicated that it would connect the beer can evidence with the accident. While Dunaway did not formally withdraw his objection, Dunaway appears to have understood that the State would be offering the prerequisite facts at a later time. In fact, the State did so with testimony from a convenience store worker that, before the accident, Dunaway purchased a case of beer of the same brand as the cardboard carton and cans appearing in the pictures. Dunaway offered no further objection to the admission of the pictures. *73 Dunaway's specific objection pursuant to Rule 104(b) made it apparent that he did not consider the Rule 403 argument or the prosecutorial misconduct argument that he now raises on appeal. Davis v. Singing River Elec. Power Ass'n, 501 So.2d 1128, 1131 (Miss.1987). Therefore, we decline to consider these arguments.

B. Improper expert testimony by a lay witness.
¶ 17. Robert L. Harrell was an investigator with the Pike County Sheriff's Department who testified as a lay witness. He testified that, three days after the accident occurred, he inspected and photographed the scene. Later, he inspected and photographed the wrecked truck. Over Dunaway's objection, the trial court allowed Harrell to opine that, based on his observations of the scene and the truck, certain portions of the truck hit certain trees during the truck's trajectory after it left the roadway. In his testimony, Harrell used photographs to show how damage to the trees and debris left by the truck corresponded with damage to specific areas of the truck.
¶ 18. Dunaway argues that Harrell's testimony was inadmissible because it was expert testimony within the ambit of Mississippi Rule of Evidence 702 and Harrell was never qualified as an expert. Mississippi Rule of Evidence 701 governs lay testimony. At the time of the trial, Rule 701 provided, "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue." Under this rule, lay witnesses may not offer opinions which require the witness to "possess some experience or expertise beyond that of the average, randomly selected adult," because those opinions stray into the realm of expert testimony. Sample v. State, 643 So.2d 524, 529-30 (Miss.1994).
¶ 19. Harrell's opinions that the damage to the trees at the accident scene corresponded to certain damage to the truck was based on his first hand perceptions as an eyewitness to the accident scene and the truck. The opinions could have been formed by anyone viewing the damaged trees and the wrecked truck and did not require any special expertise. See Seal v. Miller, 605 So.2d 240, 244 (Miss. 1992). Harrell's opinions helped explain the content of the photographs he had taken and were probative of how the accident occurred. Therefore, Harrell's testimony about the damaged trees consisted of lay opinions, did not stray into the realm of expert testimony, and was properly admitted by the trial court pursuant to Rule 701.
¶ 20. We observe that Harrell did testify that he concluded that some glass he found at the base of a tree came from a passenger window because "passenger windows are made to break in little small sizes," unlike windshields. This opinion did require specialized knowledge of vehicle construction for which Harrell was not qualified as an expert. M.R.E. 702. However, Dunaway did not object to this testimony and his earlier objection was limited to Harrell's testimony relating the damaged trees to damage on the truck. Therefore, Dunaway did not preserve this issue for our review. Davis, 501 So.2d at 1131. Notwithstanding the procedural bar, any error in admitting this testimony was harmless. Harrell's "expert" opinion was not indicative of which side of the truck hit the tree, and there was extensive other evidence that, in fact, it was the passenger side of the truck that hit the trees. This issue is without merit.

*74 C. Improper rebuttal testimony.

¶ 21. The State recalled Becky Hux as a rebuttal witness. On rebuttal, she testified about Dunaway's customary use of the pillow and forward seat position when he drove the truck, and that she found the pillow in the driver's seat and the seat in a forward position the day after the accident. Dunaway argues that this was improper rebuttal testimony because it could only have been properly admitted in the State's case-in-chief. The State counters that it offered this rebuttal to combat testimony by Dunaway's expert that he could not determine from his investigation who had been driving the truck.
¶ 22. The determination of the propriety of rebuttal evidence is within the trial court's sound discretion. Armstrong v. State, 771 So.2d 988, 999(¶ 48) (Miss.Ct. App.2000). While, generally, the State must offer all substantive evidence in its case-in-chief, when there is doubt about whether evidence is proper case-in-chief or rebuttal evidence, the court should admit the evidence in rebuttal if:
(1) "its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surrebuttal" as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.
Id. (citing Smith v. State, 646 So.2d 538, 543-44 (Miss.1994)). However, it is reversible error when there is no doubt that evidence admitted in rebuttal should have been offered in the case-in-chief. Id.
¶ 23. Dunaway never raised this issue in the lower court in any way. Therefore, this issue has not been preserved for appellate review. Fleming v. State, 604 So.2d 280, 294 (Miss.1992).

D. Improper closing argument.
¶ 24. Dunaway contends that the prosecutor's closing argument improperly stated facts not in evidence. Dunaway has failed to preserve any error pertaining to the closing argument because he failed to interpose an objection during the closing argument. "It is well settled that to preserve an objection to alleged improper remarks by counsel during closing argument, the complaining party must not only make a contemporaneous and specific objection to the remarks, but must also obtain a definitive ruling from the trial court on his objection and must request corrective action." Rials v. Duckworth, 822 So.2d 283, 287(¶ 22) (Miss.2002). Thus, we are unable to review this assignment of error.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF VEHICULAR HOMICIDE AND SENTENCE AS A HABITUAL OFFENDER TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS AND ISHEE, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY. BARNES, J., CONCURS IN PART AND IN RESULT.