# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-01692-COA

**BILLY RAY DUNAWAY A/K/A BILLY RAY DUNNAWAY A/K/A BILLY DUNAWAY**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                                APPELLEE

DATE OF JUDGMENT:                    10/17/2017
TRIAL JUDGE:                         HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED:           PIKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              BILLY RAY DUNAWAY (PRO SE)
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: SCOTT STUART
NATURE OF THE CASE:                  CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                         AFFIRMED - 03/19/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This is an appeal from the Pike County Circuit Court's denial of Billy Ray Dunaway's motion for post-conviction relief (PCR) as meritless. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Eighteen-year-old Edward Lloyd Hux (Hux) visited his mother at her work one evening. She tended bar at a local place, and her boyfriend, Billy Ray Dunaway (Dunaway), had driven Hux to see her. When they left, Hux's mother asked Dunaway to let Hux drive because Dunaway was clearly drunk. Dunaway adamantly refused, and after having driven only a short distance, he swerved into oncoming traffic. His truck flipped and threw

Dunaway from his seat to the road. But Hux's body was pinned underneath the wreckage.

¶3.     Emergency vehicles took both men to a nearby hospital. Soon after their arrival, doctors pronounced Hux dead.

¶4.     A Pike County jury found Dunaway guilty of vehicular homicide. The circuit court amended his indictment, sentenced him as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections, and ordered him to pay a $10,000 fine.

¶5.     Dunaway appealed. He challenged the sufficiency of the evidence and alleged that the circuit court erred in admitting certain evidence. This Court found no error and affirmed his conviction and sentence. *Dunaway v. State*, 919 So. 2d 67, 69 (¶2) (Miss. Ct. App. 2005). Our supreme court then dismissed his petition for certiorari. *Dunaway v. State*, 920 So. 2d 1008 (Miss. 2005). The mandate issued in February 2006.

¶6.     Next, Dunaway filed for leave to seek post-conviction relief in the trial court. The Mississippi Supreme Court denied him leave. He filed again, and the supreme court found his application procedurally barred from consideration as successive under section 99-39-27(9) of the Mississippi Code Annotated (Rev. 2000).

¶7.     Nonetheless, Dunaway filed a petition for an order to show cause or, in the alternative, for a writ of habeas corpus. The Pike County Circuit Court denied his petition, and Dunaway appealed. Our Court affirmed the circuit court's decision but determined that because Dunaway had been denied permission from the Mississippi Supreme Court, the circuit court should have dismissed Dunaway's motion for lack of jurisdiction. *Dunaway v. State*, 111 So. 3d 117, 119 (¶8) (Miss. Ct. App. 2013).

¶8.    Dunaway filed again for leave to seek post-conviction relief. This time, our supreme court granted it. In his motion for relief, he asserted that his indictment was improperly amended to add habitual-offender status after the verdict and without notice of the State's intention to do so. He further alleged that the lack of notice was prejudicial under *Gowdy v. State*, 56 So. 3d 540 (Miss. 2010).

¶9.    The circuit court denied his motion:

> Having reviewed the file and record, the court finds *Gowdy* does not apply to the case at bar. The Mississippi Supreme Court held in *Carr v. State*, that "the rule we announced in *Gowdy* does not apply retroactively to cases that were final before April 7, 2011, the date the mandate issued in *Gowdy*." 178 So. 3d 320, 321 (Miss. 2015). Finality occurs when the direct appeal process has been exhausted, and the direct appeal process was exhausted in Mr. Dunaway's case no later than February 9, 2006, approximately five years prior to the ruling in *Gowdy*.

¶10.    He appeals to this Court, again asserting that: (1) he was denied due process because the circuit court amended his indictment after his conviction;[1] and (2) his sentence was illegal because he did not receive notice of the amendment. We affirm the circuit court's judgment.

## DISCUSSION

¶11.    "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Gunn v. State*, 248 So. 3d 937, 941 (¶15) (Miss. Ct. App. 2018) (quoting *Berry v. State*, 230 So. 3d 360, 362 (¶3) (Miss. Ct. App. 2017)).

**I.    Was Dunaway denied due process because the circuit court**

---

[1] For clarity, we have combined Dunaway's first and third issues.

**amended his indictment after his conviction?**

¶12.    Dunaway argues that the State failed to cure its own errors in the indictment prior to trial, which he says is a fundamental denial of his right to due process. He further avers that under *Gowdy*, the amendment of an indictment to include a habitual-offender status after conviction is illegal.

¶13.    His general assertion is true: *Gowdy* prohibits the amendment of an indictment to include a habitual-offender status after conviction. But the rule in *Gowdy* does not apply retroactively. *Carr v. State*, 178 So. 3d 320, 323 (¶14) (Miss. 2015) ("Furthermore, *Gowdy* announced a new rule of law that does not apply retroactively because it fails to meet either of the *Teague* exceptions.").

¶14.    In *Carr*, the movant had been convicted of manslaughter before the circuit court allowed the State to amend his indictment to include a habitual-offender status. *Id.* at 320 (¶2). He appealed, and our court affirmed the conviction. *Id.* at (¶3). Thus, the mandate in that appeal issued in October 2007. *Id.* Like Dunaway, Carr sought leave from the supreme court to move for PCR twice but was denied both times. *Id.* at 320-21 (¶3). After receiving approval on the third time, Carr claimed that the habitual-offender portion of his sentence should be vacated because *Gowdy* prohibited post-conviction indictment amendments. *Id.* But our supreme court held that under *Teague v. Lane*, 489 U.S. 288 (1989), the *Gowdy* rule "does not meet either of the 'limited exceptions' that allow a new rule to be applied retroactively." *Carr*, 178 So. 3d at 322 (¶12). Therefore, the rule "does not apply retroactively to cases that were final before April 7, 2011, the date the mandate issued in

*Gowdy*." *Id.* at 321 (¶6).

¶15.    The mandate in Dunaway's appeal issued in February 2006. Under our caselaw, the

*Gowdy* rule cannot apply because Dunaway's case was final before April 7, 2011. And the

amendment of an indictment after conviction was permissible under Mississippi law at the

time of Dunaway's trial. *See, e.g.*, *Torrey v. State*, 891 So. 2d 188, 194 (¶¶35-39) (Miss.

2004). Therefore, this Court affirms the circuit court's denial of Dunaway's motion for PCR.

**II.    Is Dunaway's sentence illegal because he did not receive notice of the amendment?**

¶16.    On appeal, Dunaway argues that he was "trapped by the Prosecution['s] sandbagging

and blatant misrepresentation." He asserts that if he had known he was going to be sentenced

as a habitual offender, then he would have testified against that status.

¶17.    However, the record indicates that Dunaway received notice the day before the

sentencing hearing, and that a sentencing hearing was in fact conducted. During the

hearing—held November 22, 2002—Dunaway's counsel stated he "received the motion [to

amend] at five o'clock on yesterday . . . ." The record further shows that Dunaway was fully

aware of his habitual-offender status during the hearing:

| | |
|---|---|
| By Mr. Smith: | We have provided to the defendant his criminal record in the form of N.C.I.C. and other information. He has had access to his criminal record, and if anyone would know what his criminal record is, he should know. . . . |
| . . . . | |
| By the Court: | Billy Ray Dunaway, your background includes Cause Number 2023 in Amite, County, manufacture of controlled substance, marijuana; 2034, grand larceny, the charge of stealing 3,000 feet of power company wire was |

5

> passed to the file. Your first DUI 3rd conviction was before me and you were sentenced on June 23, 2000, to serve one year. Your next DUI conviction was before Judge Starrett. And now you have this one.

Dunaway had the opportunity to cross-examine witnesses and to testify. This issue is meritless and we affirm the circuit court's denial of his request for PCR.

## CONCLUSION

¶18.    We find that the Pike County Circuit Court properly denied Dunaway's PCR motion because he was not denied due process when the circuit court amended his indictment and he did receive notice of that amendment. Thus, we affirm the circuit court's judgment.

¶19.    **AFFIRMED.**

    **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**